DARLINGTON OIL CO. v. PEE DEE OIL AND ICE CO.

1. INJUNCTION—APPEAL.—Complaint and affidavits for perpetual injunction, showing reservation by deed of use of track scales and right to pass over lands of defendant to use them, that defendant has refused this right, and that such refusal will ruin plaintiff's business, makes out a case for temporary injunction, and it is error to set aside such injunction on motion on affidavits and try on merits in that way, and such order is appealable.

2. REHEARING will not be granted because opinion does not in terms say that the order in question is appealable or not where the context shows that the Court holds it appealable.

Before GAGE, J., Darlington, January, 1901. Reversed.

Action by Darlington Oil Co. against Pee Dee Oil and Ice Co. and Virginia-Carolina Chemical Co. for perpetual injunction and damages.

The following are the affidavits of the plaintiff used at the hearing of the motion:

"Personally appeared before me, Robert Keith Dargan, who, on oath, says:

"1. That he is the general manager, secretary and treasurer of the plaintiff corporation; that he is familiar with all of the material allegations of the complaint in this action, on the information and belief of the plaintiff, and has actual knowledge thereof; and that from such knowledge he knows that the matters of fact therein stated are true; that the use by the plaintiff of the said scales has never interfered with the use thereof by the Pee Dee Oil and Ice Company, and cannot so interfere.

"2. That at the time of the sale of a portion of the plant of the plaintiff corporation to the Virginia-Carolina Chemical Company, on the 14th day of June, A. D. 1899, Mr. C. S. McCullough was the general manager of the plaintiff corporation, and conducted, in large part, the negotiations leading up to said sale; that deponent was an employee of the plaintiff at that time, and suggested to Mr. McCullough that a reservation giving the plaintiff the right to use said scales be inserted in the deed of conveyance set out in the complaint; that Mr. McCullough acted on said suggestion and had said reservation placed in the deed aforesaid; that Mr. McCullough is now the president and treasurer of the Pee Dee Oil and Ice Company, and appears to be the manager thereof.

"3. That deponent conducted the negotiations for the plaintiff corporation with the Atlantic Coast Line Railroad Company in regard to the repair of said scales, and transmitted the letter of said railroad company to the Virginia-Carolina Chemical Company; that deponent received the following letter from the said last mentioned corporation: 'Virginia-Carolina Chemical Company, Richmond, Virginia. Office of the Secretary, August 5, 1899.   Track scales at Darlington.   Mr. Robt. Keith Dargan, Darlington, S. C.— Dear Sir: Your favor of the second instant is to hand, enclosing letter from the railroad company in regard to our track scales.   In reply thereto, I beg to say that we really

see but little use that we will have for the track scales at our Darlington fertilizer factory, and, therefore, do not feel disposed to go to the expense that the railroad company desires in the premises. If the Cotton Seed Oil Company are willing to go to this expense for the use that they get out of the scales, it will be satisfactory to us for them to do so, but otherwise we would prefer to take the scales out. Yours truly, S. D. Crenshaw, secretary.' And then entered into the agreement with said railroad company as set out in the complaint, for the repair of said scales.

"4. That the plaintiff has continued to use said scales, under the reservation in the deed aforesaid, up to and until the 21st instant, when such use was forbidden by Mr. McCullough, the president and treasurer of the Pee Dee Oil and Ice Company; that deponent demanded of the railroad company that it should weigh the cars of the plaintiff, and said railroad company refused to do so for the reason that Mr. McCullough forbade said railroad company so to do.

"5. That on the 23d instant, the plaintiff received a car of cotton seed consigned to it; the tare weight on said car had been obliterated; the railroad company weighed said car, seed and all, but deponent could not find out weights of the car and requested the railroad company to weigh said empty car, so as to find out the net weight of the seed in the car. This reasonable request was refused for the reason above stated, and deponent was obliged to take the shipper's weights, without verification.

"6. That on the 25th instant, the plaintiff received an empty tank car consigned to it to be filled with cotton seed oil, and deponent requested the railroad company to weigh said tank car, in order that deponent might thus ascertain its true, correct weight, and this reasonable request was again refused by said company for the reasons above stated.

"7. That the plaintiff corporation has now large and costly shipments of oil and hulls sold under contract for delivery in the month of September instant, and have been unable to

make said shipments because they cannot have their cars, when loaded with said products, weighed."

Sworn to.

"Personally appeared before me, W. E. James, jr., who, being duly sworn, says that he is now in the employment of the plaintiff corporation, and has been for the past year; that in the performance of his duties as such employee, on Friday last, the 21st day of September, instant, having been directed so to do, he went to the railroad track scales, described in plaintiff's complaint, to weigh an outgoing car loaded with loose cotton seed hulls, as he had heretofore done; that said car was loaded with the aforesaid hulls, which had been sold by the plaintiff, to be shipped to their destination; that upon approaching the premises of the defendant, the Pee Dee Oil and Ice Company, for the purpose aforesaid, he was called by Mr. C. S. McCullough, president and treasurer of the said defendant corporation, and was told by him to inform his (deponent's) people or employers that they could not use said scales any longer; that deponent asked Mr. McCullough if he could not weigh the car of hulls then loaded to be shipped out and then being shifted to be brought to said scales, and he replied that he could not; that plaintiff was then compelled to ship said car unweighed."

Sworn to.

The Virginia-Carolina Chemical Company take a neutral position by its answer.

The defendant, Pee Dee Oil and Ice Company, moves to dismiss the temporary injunction on the following affidavits and answer and other pleadings:

"Personally appeared before me, C. S. McCullough, who, being duly sworn, says that the Darlington Oil Company is successor to the late Darlington Phosphate Company and the Darlington Ginning, Milling, Fertilizer and Warehouse Company, under successive charters and amendments thereof. That the Darlington Ginning, Milling, Fertilizer and

Warehouse Company (to whose business the Darlington Oil Company is successor) was chartered and begun business on or about August 11, 1888; that deponent was the president thereof; that for several years said company, under its then name and charter and changes and amendments thereto, successfully and profitably operated the oil mill plant now being operated by the Darlington Oil Company, and at the same place, doing the same character of business and under the same conditions, without owning or even use of track scales.

"That on or about August 11, 1891, the Darlington Phosphate Company, an entirely separate corporation, was organized and chartered, and the plant thereof operated on lands adjoining the lands of the Darlington Ginning, Milling, Fertilizer and Warehouse Company, or its successor; that one of the railroad side tracks, passing immediately in front of and by the doors of Darlington Ginning, Milling, Fertilizer and Warehouse Company (and then and ever afterwards and now the only tracks used by it and its successors to get cars to its mill) was extended upon the lands of the Darlington Phosphate Company, by the said Darlington Phosphate Company, and junction thereon made with side track upon its own lands, and that the said Darlington Phosphate Company purchased and erected the track scales now owned by the Pee Dee Oil and Ice Company on its own lands, which lands now belong to the said Pee Dee Oil and Ice Company. That some years after this the Darlington Ginning, Milling, Fertilizer and Warehouse Company, or its successor, and the Darlington Phosphate Company were consolidated under the title of Darlington Phosphate Company, and so remained until Darlington Phosphate Company sold to Virginia-Carolina Chemical Company the plant of the old Darlington Phosphate Company, including lands and personalty.

"That, as above stated, said side track, the extension of which is above referred to, runs immediately along the front of and by the doors of Darlington Oil Company for a dis-

tance hardly less than 600 feet, and over its property, including above, about 1,000 feet, and besides this track there is at least one other track on its land of about 200 feet. That such track scales require a length of track not over forty feet, and there is room in these tracks on the premises of Darlington Oil Company for from twenty to twenty-five pairs of scales, and there are many places therein suitable in every respect for their erection and use, and such scales are easily procurable and can, in from ten to fifteen days, be obtained and erected.

"That said track scales are situated very close to buildings of Pee Dee Oil and Ice Company and within ten feet of its office door, and the track in which it lies crosses the roads or streets by which access is had to its plant; that serious trouble and inconvenience is caused to the Pee Dee Oil and Ice Company by the weighing of cars of plaintiff on said scales by the noise of shifting cars and absolute blocking entrance to its plant, on some occasions for a considerable time. In the instances alleged and admitted, this deponent did not refuse to allow the weighing of the cars wilfully or wantonly, but he did so in pursuance of the rights and interests of the Pee Dee Oil and Ice Company.

"That deponent is president and treasurer of, and has the entire management of the affairs of the Pee Dee Oil and Ice Company.

"That deponent on two occasions refused to the plaintiff herein the use of said track scales, since which time nothing has been said to the deponent on this subject, or any further demand made upon him, and that he did not know or have any intimation that suit was contemplated until service upon him, as such officer of the company, of the complaint and other proceedings herein."

Sworn to.

"W. Albert Parrott, being duly sworn, says that he is clerk of the Court of Common Pleas and General Sessions for Darlington County. That the deed from the Darlington Phosphate Company to Virginia-Carolina Chemical Com-

pany as exhibit 'B' to the complaint herein is only recorded in book 28, at page 362, said book being only for recording real estate deeds and writings relating to real estate and marriage settlements."

Sworn to.

The defendant, Pee Dee Oil and Ice Company, answering the complaint herein:

"I. Admits the truth of the allegations contained in the second and fifth paragraphs of the complaint, and admits, upon information and belief, the truth of the allegations contained in the first, third, fourth and sixth paragraphs of the complaint.

"II. Has neither knowledge nor information sufficient to form a belief as to the truth of the allegations contained in the eighth paragraph of the said complaint.

"III. This defendant further admits the conveyance to it of the tract of land and other property set forth in exhibit 'D' of the complaint for value, and also the conveyance of the Darlington Phosphate Company to the Virginia-Carolina Chemical Company of the property set forth in exhibit 'B' thereto, but denies that the Pee Dee Oil and Ice Company as a corporation had legal notice either actual or constructive of the claim of the plaintiff to the use of the railroad track scales as set forth in the last above named conveyance.

"IV. Admits the record of the said deed of conveyance from the Darlington Phosphate Company to the Virginia-Carolina Chemical Company in the office of the clerk of the Court of Common Pleas for Darlington County, but alleges as its information and belief that said instrument is recorded therein only as a deed of real estate, in book 28, of page 362.

"V. This defendant further admits that it refused to the plaintiff on two occasions the use of the track scales, and alleges that the plaintiff has no right to the use thereof against this defendant, but, on the contrary, that whatever rights it had to the use thereof are not burdens upon the

property named, which is now the sole and exclusive property of this defendant, but that such rights were revoked and became nugatory by the conveyance thereof by the Virginia-Carolina Chemical Company to this defendant.

"VI. This defendant admits that the nature of the plaintiff's business is as set forth and alleged in the complaint, but denies that the use of the property claimed is essential or necessary to the conduct of plaintiff's said business, but that said business was successfully conducted for several years prior to the construction of the said track scales.

"VII. Some of the stock of this defendant is owned by the Virginia-Carolina Chemical Company, and some of the capital stock of this defendant is owned by persons who were former stockholders in the Darlington Phosphate Company. This defendant is a corporation duly chartered under the laws of this State, independent from and having no connection whatever with the said Virginia-Carolina Chemical Company.

"VIII. This defendant denies that any of its acts in the premises have been wanton or wilful, as alleged by the plaintiff, and that the plaintiff has suffered damage to the amount alleged in the complaint or in any sum whatever.

"IX. This defendant further alleges and submits that plaintiff has, as defendant is informed and believes, an adequate and complete remedy at law for alleged breach of the rights claimed, and that there is no equity in the said complaint.

"X. Denies each and every the remaining allegations of the said complaint."

The plaintiff introduced the following affidavits in reply:

"Personally appeared E. M. Price, who, on oath, says: That he is the book-keeper for the Darlington Oil Company; that in the year when the Darlington Ginning, Fertilizer and Warehouse Company consolidated with the Darlington Phosphate Company, deponent entered into the employment of said consolidated company as a seed weigher; that there

was no railroad track scales then used for weighing seed; that the great majority of the seed used was bought from wagons, and supplied from this county; that the seed that were shipped in by rail were brought in cars which were run off on the side track running by plaintiff's warehouse, and were unloaded by a hand cart, which was drawn into the warehouse and weighed by the cart load on a set of wagon scales therein located; that no demurrage was charged by railroad company on cars loaded with seed, and the company was allowed to let the seed remain in the cars until they could be unloaded by the method above stated; that to unload four cars a day was a good day's work by the method then in use; that deponent has been in the employment of the plaintiff, in one capacity and another, since the above stated period; that the business of the plaintiff has increased at least one hundred per cent. the last season, and the capacity for the present season has still been increased; that the railroad company charges a demurrage of one dollar per car per day for each car that remains unloaded after seventy-two hours; that plaintiff sometimes receives as many as twenty cars a day, and to-day received that number; that it would be impossible for plaintiff to conduct its present volume of business without the use of railroad track scales. And deponent further says the mill of the plaintiff is working on full time, both night and day, while the defendant company, the Pee Dee Oil and Ice Company, has not commenced its oil business yet, but is now putting in its machinery; that it has only been running so far its ginnery."

Sworn to.

"Personally appeared before me, Frank Pegues, who, being duly sworn, says that he is agent of the Atlantic Coast Line Railroad Company at Darlington, S. C.; that the repairs on the railroad track scales last year were made by said company with lumber furnished by the Darlington Phosphate Company; that said company, before and since, has had the use of said scales for the purpose of weighing incoming and outgoing cars, and the said railroad company

has used said scales to weigh incoming and outgoing cars for itself and for its patrons, except that a short time before a copy of the injunction in this case was served upon the Atlantic Coast Line Railroad Company, this defendant was notified by Mr. C. S. McCullough, the president and manager of the Pee Dee Oil and Ice Company, over the telephone, that he objected to the cars of the Darlington Oil Company being weighed on said scales, loaded with oil, meal and hulls to be shipped, except such cars as were coming in loaded with freight for said company, upon which the railroad company had freight; that these cars could be weighed on said scales in order that the railroad company could ascertain and collect its freight charges; that deponent thereupon notified the Darlington Oil Company of Mr. McCullough's objections. Mr. McCullough did not object to Atlantic Coast Line Railroad Company using said scales to weigh cars for its other patrons, and the said scales were continued to be so used by said company."

Sworn to.

"Personally appeared before me, Frank Welch, who, on oath, says that he is a freight conductor for the Atlantic Coast Line Railroad Company; that a short time before the service of a copy of the injunction in the above stated case on the said company, he carried a car for the Darlington Oil Company to the railroad track scales, situate on the premises of the Pee Dee Oil and Ice Company, as he had often done for the Darlington Oil Company before, to be weighed on said scales; that he was met by Mr. C. S. McCullough, president and treasurer of the Pee Dee Oil and Ice Company, and forbidden to weigh said car; that he then carried said car to the plant of the Darlington Oil Company unweighed, and informed said company that Mr. McCullough would not allow the same to be weighed."

Sworn to.

"Personally appeared before me, M. S. Chase, who, on oath, says that he is a freight conductor for the Atlantic Coast Line Railroad Company; that on the morning of the

day the copy of injunction was served on the Atlantic Coast Line Railroad Company, he was given said copy and instructed to take a tank car to the railroad track scales, on the property of the Pee Dee Oil and Ice Company, and weigh it for the Darlington Oil Company; that this he proceeded to do, and when he arrived at the scales with said tank car, Mr. C. S. McCullough met him and said, 'Don't you know that I have issued orders not to weigh that tank car on these scales?' or words to that effect; that deponent exhibited the copy of the injunction and proceeded to weigh said tank car."

Sworn to.

"Personally appeared before me, J. B. Gray, who, on oath, says that he is a seed buyer for the Darlington Oil Company; that the printed circular letter, without date, hereto attached, signed 'Pee Dee Oil and Ice Company,' and marked by me exhibit 'A,' was handed to deponent by his son, H. S. Gray, some time during the month of September last, and that his said son is a seed buyer for the Pee Dee Oil and Ice Company."

Sworn to.

Exhibit "A," attached to affidavit of J. B. Gray:

"Darlington, S. C., 1900. To seed shippers: I want to call your attention to the method of some cotton seed oil mills in weighing their seed. They weigh the car load of seed and then deduct from the gross weight the weight stencilled on the car. By this method they make from 500 to 1,500 pounds of seed on every car load. In other words, the shipper does not get pay for that many seed. For example, you take a car load of seed weighing 60,000 pounds gross. The stencil marked on the car is 30,000 pounds. They would settle with you for 30,000 pounds of seed. If the car weighed 29,000 pounds, which is not improbable, you would be entitled to receive pay for 31,000 pounds of seed. The cars were weighed and stencilled when new. They have since dried out and weigh from 500 to 1,500 pounds less now than when the stencil mark was put on them. Our

method of weighing seed: We weigh the car of seed, unload the seed, run the empty car back on the scales and weigh that. By this method of weighing the shipper gets exactly what is in the car, nothing more or less. Our competitors can afford to pay fifty cents more per ton for seed by their method of weighing. In the last few days we have watched this matter very closely, and we have not found one car yet but what weighs less now than what it is marked. Now, they will tell you that they will settle with you by railroad weights. Of course, this is the only way that the railroads can weigh the seed, as they do not weigh the empty cars as the cars are usually weighed in transit. We weighed five cars this morning, the difference was 2,900 pounds in the five cars—that is, we paid for 2,900 pounds more seed than the mills that adopt the other method would have paid for same cars. If you will ship us your seed we will give you the highest market price for them and pay you for every pound that is in the car. Please show this to the other seed buyers in your town. Yours truly, Pee Dee Oil and Ice Company."

"Personally appeared before me, J. H. David, who, on oath, says that he is the president of the Dillon Cotton Seed Oil Company and of the Marion Oil Mill, the former situate at the town of Dillon and the latter at the town of Marion, both in the State aforesaid; that oil mills are now so numerous in this State and competition in buying seed so great, that no mill can depend for its supply of seed upon its own locality, for the reasons above stated, and for the reason that mills from other parts of the State frequently have buyers located in mill towns and buy their supplies of seed wherever they can get them, hence it becomes necessary for all mills to do likewise, and such is the habit and custom; that under such system of conducting the business it is now impossible for an oil mill to do business without the use of railroad track scales upon which to test its incoming cars containing seed, and its outgoing cars containing manufactured products."

Sworn to.

"Personally appeared before me, Robert Keith Dargan, who, being duly sworn, says:

"First. That the plaintiff corporation has 125 cotton seed buyers located in this State and in the State of North Carolina; that up to this date, the 18th instant, and since the 1st instant, the plaintiff has received 123 cars of cotton seed, and within the same dates shipped out thirteen tanks of oil and cars of hulls, all of which incoming and outgoing cars and tanks were weighed on said scales.

"Second. That the oil mill business is never run after hot weather sets in, that deponent has ever heard or known of in this climate, and is generally closed down on or about the first of June of each year on account of the hot weather.

"Third. That the real estate of the plaintiff and of the defendant, the Pee Dee Oil and Ice Company, are contiguous, with a railroad track running from one property across the dividing line, and in and upon the other, and the free use of this track across the property of the plaintiff was given to the Virginia-Carolina Chemical Company under the deed from the plaintiff to said latter company."

Sworn to.

"Personally appeared, Bright Williamson, who, being duly sworn, says:

"First. That he is the president of the plaintiff corporation in the above stated case; that he was a director and secretary of the board of directors of the old Darlington Ginning, Milling and Fertilizer Company from its organization up to its consolidation with the Darlington Phosphate Company; that he was president of the Darlington Phosphate Company at the time that a portion of its plant was sold to the Virginia-Carolina Chemical Company.

"Second. That, comparatively, the business of manufacturing oil and cotton seed meal now done by the plaintiff corporation is more than a hundred per cent. greater than the same business done by the old Darlington Ginning, Milling and Fertilizer Company.

"Third. That when the plaintiff sold a portion of its plant

to the Virginia-Carolina Chemical Company, Mr. McCullough was placed in charge of the property so sold by the said Virginia-Carolina Chemical Company, and continued in charge up to the organization of the Pee Dee Oil and Ice Company, and to the sale of the property in question by the Virginia-Carolina Chemical Company to said defendant corporation.

"Fourth. That when the plaintiff sold a portion of its plant as aforesaid, besides the deed mentioned in the complaint, exhibit 'B,' the plaintiff also executed a bill of sale of the chattels and portable personalty sold, and in said bill of sale the railroad track scales were not included. Said scales are attached to and built into the freehold, with a railroad track running across them.

"Fifth. That the two pieces of real estate now belonging to the plaintiff and the defendant, Pee Dee Oil and Ice Company, respectively, all of which originally belonged to plaintiff, are contiguous territory.'

Sworn to.

"I, W. Albert Parrott, clerk of the Court of Common Pleas and General Sessions in and for the county and State aforesaid, do hereby certify that there is no bill of sale of personal property from the Darlington Phosphate Company to the Virginia-Carolina Chemical Company recorded in my office, except of such property as is mentioned in deed recorded in book No. 28, page 362."

From the order dissolving the temporary injunction, the plaintiff appeals.

*Mr. W. F. Dargan,* for appellant, cites: *As to right of plaintiffs to institute this proceeding and have it determined by modes of trial provided by law:* 10 Ency. Pl. & Pr., 794, 801, 891; 6 Ency., 149, 150, 151; 51 S. C., 435; 54 S. C., 473; 48 S. C., 177; 55 N. Y., 220. *Surrounding circumstances must be considered in deciding whether scales were fixtures:* 1 Bail., 540; 31 S. C., 275; 11 S. E. R., 1072; 5 L.

14—62

R. A., 150, 594; 10 L. R. A., 724. *As to the reservation by deed:* Wash. on Easements, 34, 35, 256-264; 20 L. R. A., 631; 6 Ency., 142; 5 Ency., 455; 17 L. R. A., 420; 37 S. E. R., 345. *Plaintiff's right is not a license:* 54 Am. Dec., 159; 5 Ency., 434; 31 S. C., 274.

*Messrs. Woods & Macfarlan,* contra, cite: *Order appealed from is not appealable:* 42 S. C., 101; 51 S. C., 435; *Temporary injunction should only preserve statu quo:* 27 S. C., 415; 25 S. C., 44. *This order cannot prejudice plaintiff on trial:* 34 S. C., 353; 48 S. C., 315; 10 Ency. Pl. & Pr., 1089; 8 S. C., 112; 13 S. C., 484; 25 S. C., 122; 47 N. Y., 469. High on Injunctions, 1703, 1705, 1706, 1512; 54 S. C., 457. *Scales are personal property:* 31 S. C., 294; 15 S. C., 70; Jones on Chat. Mtg., 133; 3 Pom. Eq. Jur., sec. 1341, 1402; 3 McC. Ch., 308. *Plaintiff should have established his right at law by suit for damages:* 17 S. C., 412; 3 McC. Ch., 308; 10 Ency. Pl. & Pr., 987. *Easements cannot exist as to personal property:* 37 N. E. R., 132; 6 Ency., 142, 132. *Reservation being a license is revocable:* 84 N. Y., 42; 32 N. J. Eq., 252; 13 Ency., 545; 23 S. C., 18; 31 Am. St. R., 139-140; 33 *Id.*, 540; 10 Am. Dec., 41; 92 Am. Dec., 656; 25 N. E. R., 376; 84 N. Y., 43; 8 Wheat., 203; 11 Ad. & E., 34; 11 Allen, 141; 3 Ency., 541.

The opinion was filed July 29, 1901, but held up on petition for rehearing until

November 29, 1901. The opinion of the Court was delivered by

MR. JUSTICE POPE. This action was commenced on the 26th day of September, 1900, by the service of the summons in the usual form and notice of no personal claim on the defendant, the Virginia-Carolina Chemical Company. The object of the action was to establish, by the judgment of the Court, the right of the plaintiff to have free access to and use of the railroad track scales situate on the premises of the de-

fendant, the Pee Dee Oil and Ice Company, and to any and all substitutes therefor. That until the final hearing of the cause, the defendant, the Pee Dee Oil and Ice Company, its officers, agents and servants, be enjoined from, in any manner, interfering with the plaintiff's free access to and use of the aforesaid railroad track scales and to any and all substitutes therefor, and that upon the final hearing such injunction be made perpetual. For $5,000 damages against the defendant, the Pee Dee Oil and Ice Company, and for such other and further relief as the Court may see meet and proper.

The complaint sets out in its first paragraph the fact that plaintiff was duly incorporated under the laws of this State. Its second paragraph sets out that the defendant, the Pee Dee Oil and Ice Company, was duly incorporated under the laws of this State. The *third paragraph* sets out the incorporation of the defendant, the Virginia-Carolina Chemical Company, under the laws of the State of New Jersey. The *fourth and fifth paragraphs* set out that the plaintiff, under its new charter name of the Darlington Phosphate Company, on the 14th June, 1899, sold and conveyed, for a valuable consideration, a portion of its plant unto the Virginia-Carolina Chemical Company, as fully appears by its deed therefor by exhibit B, annexed to the complaint. The *sixth paragraph* states that the plaintiff agreed with the defendant, the Virginia-Carolina Chemical Company, to change its corporate name before 1st January, 1900, and in accordance with its agreement its corporate name was changed, under the laws of this State, from the Darlington Phosphate Company to that of the Darlington Oil Company. The *seventh paragraph* alleges, "that under and by the terms of the deed of the plaintiff, *exhibit B,* to the defendant, the Virginia-Carolina Chemical Company, the plaintiff expressly reserved the right 'to have free access to, and use of, the railroad track scales' situate on the premises conveyed, 'and any and all substitutes.' " The *eighth paragraph* alleges that when the Atlantic Coast Line Railway, which operated trains over the

side track wherein the railroad track scales were located, notified this plaintiff that they were defective from use and must be repaired, the plaintiff notified the defendant, the Virginia-Carolina Chemical Company, thereof, and the latter notified the plaintiff by letter, on 5th day of August, 1899, "that it (we) really saw but little use it (we) will have for the track scales" * * * and, therefore, do not feel disposed to go to the expense that the railroad company desires in the premises, "but if the plaintiff is willing to go to the expense of furnishing the lumber necessary to renovate such track scales for the use it gets out of the scales, it would be satisfactory to the Virginia-Carolina Chemical Company for the repairs to be made. That accordingly the plaintiff furnished to the said railroad company the necessary lumber at cost of $41.06." *Paragraph nine* alleges that, on the 30th day of July, 1900, for a valuable consideration, the Virginia-Carolina Chemical Company, by its deed therefor (exhibit D), sold to the defendant, the Pee Dee Oil and Ice Company, amongst other things mentioned in its deed, all the right, title, interest and use of the said Virginia-Carolina Chemical Company in and to all side tracks and scales as specified in the deed of the plaintiff to the said Virginia-Carolina Chemical Company, dated 14th June, 1899. *Paragraph ten* alleges upon information and belief that the defendant, Virginia-Carolina Chemical Company, owns and controls at least one-half of the capital stock of the defendant corporation, the Pee Dee Oil and Ice Company; that a large part of the other half of the capital stock of the Pee Dee Oil and Ice Company is owned and controlled by former stockholders and officers of the plaintiff, and that the Pee Dee Oil and Ice Company, through its officers, had actual and constructive notice of the plaintiff's reserved rights under the deed of plaintiff to the defendant, the Virginia-Carolina Chemical Company. *Paragraph eleven* alleges that the free access to and use of said scales have been and are now absolutely necessary to the conduct of plaintiff's business; that the major part of its raw material is shipped to it in car load

lots, and the major portion of its manufactured products, consisting of oil, meal and hulls, are sold and shipped out in car load lots and in oil tanks; that its custom is to have the weights of the raw material coming in and the manufactured products shipped out tested by said scales. "That the plaintiff is now in the midst of its busy season, has relied absolutely upon its right to the use of said scales, and specially reserved those rights in the sale aforesaid, which is well known to the defendants." *Paragraph twelve* alleges that notwithstanding the foregoing facts, the plaintiff had uninterrupted use of such railroad track scales while the defendant, the Virginia-Carolina Chemical Company, had possession of the property conveyed it by the plaintiff up to the time in July, 1899, it sold its plant to the Pee Dee Oil and Ice Company, and also from July, 1900, to 21st September, 1900, while the latter owned the property, and notwithstanding the plaintiff in its deed had expressly reserved the right of access to and use of the railroad track scales, yet on the 21st September, 1900, the defendant, Pee Dee Oil and Ice Company, ruthlessly and wantonly invaded plaintiff's rights as to such track scales by forbidding the plaintiff to use such scales, and by forbidding the Atlantic Coast Line Railway to weigh any cars intended for the plaintiff, or intended to be forwarded by the plaintiff, on said track scales. *Paragraph thirteen* alleges that plaintiff has been injured by the said unlawful, wilful and wanton refusal of the defendant, the Pee Dee Oil and Ice Company, in the sum of $5,000. *Paragraph fourteen* alleges "that it is impossible for it to carry on its large business without the use of said railroad track scales; that it is now too late in the season to provide other scales; that it has already been damaged by the unlawful, wilful and wanton acts of the said defendant, and that if the defendant be allowed to continue unlawfully, wilfully and wantonly to prevent the plaintiff from the enjoyment of its property rights in the premises, the plaintiff's business will be further seriously injured and destroyed." The prayer

for judgment is virtually stated when we announced at the beginning of this opinion the *object* of the action.

On the complaint and the affidavits of Mr. Bright Williamson, as the president of the plaintiff corporation, of Robert Keith Dargan, Esq., and of W. E. James, jr., Esq., an *ex parte* application for a temporary injunction was made before his Honor, Judge Watts, the resident Judge of the 4th Judicial Circuit, which was granted by Judge Watts on the 27th day of September, 1900. The two defendants thereafter answered. Upon due notice thereafter, a motion to dissolve Judge Watts' order of temporary injunction was made before Judge Gage on the 13th day of October, 1900, by the Pee Dee Oil and Ice Company, on the pleadings and the affidavits of C. S. McCullough, Esq., and of W. Albert Parrott, Esq., as C. C. C. P. At the date of the hearing before Judge Gage, both parties used affidavits. The affidavits and the answers of defendants will be reported.

On the 31st day of January, 1901, the Circuit Judge made an order dissolving the temporary injunction granted by Judge Watts. The following is the text of Judge Gage's order:

"This is a notice by defendant, the Pee Dee Oil and Ice Company, to dissolve a temporary order of injunction made by Judge Watts on 27th September, 1900. There are five stated grounds therefor. These grounds are: 1. Because there is no equity in the plaintiff's complaint. 2. Because the plaintiff's injury, if any, for the violation of its alleged right, as set forth in the complaint, is not irreparable. 3. Because an injunction is preventive and not remedial, and there is no allegation in said complaint of any threatened invasion of plaintiff's rights, but only as to what damage would ensue if defendant should invade such alleged rights. 4. Because, even if the alleged right to the use of the property as set forth in the complaint exists as claimed, the plaintiff has an adequate and complete remedy at law for any breach thereof, this defendant being solvent and fully able to respond to any recovery in damages. 5. Because, even

if the alleged right to the use of the property as claimed in the complaint exists in the plaintiff, which this defendant denies, the said order of injunction was improvidently issued, and because the complaint fails to show right of action and cause for injunction against this defendant.

"By consent of counsel, I reserved my opinion for a more thorough consideration of the issues made. The argument was able and helpful. The questions presented are intensely interesting. The motion is made on the pleadings and sundry affidavits submitted by both sides. In the argument before me there was no serious contest about any fact; the issues argued were those of law. The plaintiff was incorporated 11th August, 1891, as the Darlington Phosphate Company. Its name was thereafter, on 1st January, 1900, changed, by amendment of its charter, to the Darlington Oil Company. It was possessed of a parcel of land lying along the track of the Atlantic Coast Line Railway Company, upon which was located a fertilizer factory, and through which there ran a railroad side track, from the Atlantic Coast Line Company. In that side track there were scales upon which to weigh car load lots. On 14th June, 1899, plaintiff conveyed by deed eight and one-half acres of the said lands, with factory thereon, to the Virginia-Carolina Chemical Company, reserving still other land upon which the railroad side track extended. The plaintiff now operates an oil mill on its own lands, but uses the aforementioned scales to weigh its cotton seed. The scales are in that part of the side track which lies on the eight and one-half acres. It does not clearly appear who owns the railroad side track. The cars of the Atlantic Coast Line Company are operated over it, and I assume the iron and crossties belong to that railway company. In the beginning, the scales were purchased and owned by the plaintiff, and I assume they were put in by the railway company, because it appears that company made the repairs thereon, and the scales constitute a part of its track. When the plaintiff conveyed to the Virginia-Carolina Chemical Company the eight and one-half

acres before mentioned, it, in the same instrument, released by quit claim all its right, title and interest in and to the side track thereon, and conveyed also the same right to use any and all the side tracks it then enjoyed by permission of the Atlantic Coast Line Railway Company, but reserved in the deed the right of 'free access to and the use of said railroad track scales * * * and any and all substitutes therefor.'

"The questions of law are: what right has the plaintiff in the scales? And if it has a right, can the assignee of the Virginia-Carolina Chemical Company, to wit: the Pee Dee Oil Company, be enjoined from an interference therewith? Under the proof, I consider the rights of the Pee Dee Oil Company no higher than were those of its assignor. That view was not conceded by defendant's counsel, but it was not seriously contested. The aforementioned reservation by the plaintiff is the same as if the Virginia-Carolina Chemical Company had by independent deed conveyed to it the right to use the scales. That is the transaction in fact though not in form. The defendant contends that the scales are its personal property, and even though the use thereof was granted to the plaintiff, yet for a breach of such contract, if contract it was, defendant is liable only for damages to be assessed by a jury at law. If it be so that the scales are personalty, a contract for the use thereof will not be specifically enforced, and as a corollary thereto, a breach of the contract will not be enjoined. It will not be denied that if the scales were sitting loose upon the land of the Pee Dee Oil Company, and confessedly of a personal character, such a contract as that by which the plaintiff claims to use them would not be specifically enforced. If it must be enforced by decree for specific performance or by injunction, it must be because the scales are not personalty, but are a part of the defendant's land called fixtures. The record shows that the scales are joined to the soil; but the simple fact of joinder does not determine their character. Whether the scales be land or personalty, is a mixed question of fact and of law, but chiefly of fact. The old cases do not much help the decision of this cause,

for the facts here are the new creations of an industrial science which is not content with the use of old things.    The elements of difficulty are, a railroad side track on the Pee Dee Oil Company's land, belonging to and used by a railway company, a small section of which track is—not rails resting on crossties imbedded in the soil—but rails resting on another device called scales to register the weight of a car superincumbent upon the rails.    The scales are useless but for the track, yet the track belongs to one party and the scales to another party.    The side track, except the section thereof called scales, is the personal property of the railway company.    When the Darlington Phosphate Company got the railway company to underlay a part of its track with scales, did it intend that those scales should partake of the nature of land—that is, permanently remain there as part of the land; or did it intend that the scales should partake of the nature of the side track—that is, be liable to exist or be removed with it?    It is reasonably clear that the last named intention was entertained; and as a consequence, the scales are personal property in character.

"It is, however, contended by the plaintiff, that even though the scales be personal property, yet the clause in the deed hereinbefore quoted, created an easement on the land of the Pee Dee Oil Company, to wit: the eight and one-half acres in favor of the plaintiff.    But the right to enter on the lands of another to use personal property there situate, cannot be termed an easement.    An easement is an estate in land, and the scales are not land.    If the right created by the said reservation be a license, it is revocable at the will of the grantor, unless the grantee has coupled with it an interest in the scales.    The grantee has no such interest, except it be for the lumber furnished for repairs thereon.    Inconsiderable repairs would not create such an interest; and it does not appear that the repairs in this case were aught else.    If the said reservation by deed was a contract, on consideration, to use the scales, action at law lies for a breach thereof, and the plaintiff is remitted there for a remedy.

"It is, therefore, ordered, that the order of injunction above referred to be, and the same is hereby, dissolved."

The plaintiff now appeals from the order on the following grounds:

"First. These proceedings having been brought for the purpose of obtaining a permanent injunction, and the facts alleged in the complaint being sufficient to obtain a temporary injunction, it was error in his Honor, upon motion on affidavits, to decide the case on its merits, and to dissolve the temporary injunction granted by Judge Watts.

"Second. The issues raised by the pleadings being partly issues of fact and of law, the plaintiff had the right to have them determined by the proper authority, and his Honor erred in deciding such issues at chambers upon affidavits.

"Third. His Honor erred in holding, without having any testimony before him to that effect, that it was reasonably clear that when the Darlington Phosphate Company got the railway company to underlay a part of its tracks with scales, it intended that the scales should partake of the nature of the side track—that is, be liable to exist or be removed with it, and that as a consequence the scales are personal property in character.

"Fourth. Having held that 'the record shows that the scales were joined to the soil,' and that the intention with which they were joined to the soil determines whether they were fixtures or not, it was error in his Honor to hold, without any testimony before him as to the intention of the parties in so joining said scales to the soil, that the scales are personal property in character, and not fixtures.

"Fifth. Because, whether the scales were so connected with the soil as to constitute them fixtures, and what were the intentions of the parties in so connecting them, are questions of fact, which the plaintiff had the right to have determined at the proper time, in the proper manner and by the proper authority, and pending such determination, the injunction should have been continued, and his Honor erred in not so holding.

"Sixth. That having held that 'whether the scales be land or personalty, is a mixed question of fact and of law, but chiefly of fact,' his Honor erred in deciding such question of fact at chambers on affidavits, and upon an assumption as to the intentions of the parties at the time the scales were built.

"Seventh. That having held that the reservation by the plaintiff in its deed to the Virginia-Carolina Chemical Company of the right to have free access to and use of the railroad track scales, and all substitutes therefor, is the same as if the Virginia-Carolina Chemical Company had, by independent deed, conveyed to the plaintiff the right to have free access to and use of said scales and all substitutes therefor, his Honor erred in holding that such a reservation, or deed, did not create an easement in and over the land of the Pee Dee Oil and Ice Company, in favor of the plaintiff, for the purpose therein stated.

"Eighth. Because it is respectfully submitted that the clause in the deed reserving to the plaintiff the right to have free access to and use of the railroad track scales, and all substitutes therefor, creates an easement in and over the lands of the Pee Dee Oil and Ice Company in favor of the plaintiff, irrespective of the questions as to whether the present scales on said lands are fixtures or not, and his Honor erred in not so holding.

"Ninth. Because his Honor erred in holding that if the right created by the reservation in said deed be a license, it is revocable at the will of the grantor—that is, of the Pee Dee Oil and Ice Company.

"Tenth. Because his Honor erred in holding that the grantor, or the plaintiff, has no interest in said scales, except it be for the lumber furnished for repairs thereon, and that such repairs were too inconsiderable to create such an interest.

"Eleventh. Because, having held that the reservation in the deed is tantamount to an independent deed from the Virginia-Carolina Chemical Company to the plaintiff, and the

Pee Dee Oil and Ice Company acquired no greater right than its assignor, his Honor erred in holding, in effect, that such reservation was a contract to use the scales on consideration, for which an action at law lies for the breach thereof, and in remitting the plaintiff there for a remedy, and in denying plaintiff equitable relief."

We will now consider the questions which we regard essential to a proper disposition of these grounds of appeal, as, we may remark at the outset, the appellant has set us a proper example in that direction by considering together its first, second, third, fourth and fifth grounds of appeal. What is a preliminary injunction? The definition found in 10 Ency. Pleadings and Practice, at 878, answers this question very well; it is: "A preliminary injunction, or, as it is sometimes called, injunction *pendente lite,* is a provisional remedy granted before the hearing on the merits for the purpose of preventing the perpetration of wrong, or the doing of any act whereby the rights in controversy may be materially injured or endangered before the final decree, and its purpose is to preserve the subject of controversy until an opportunity is afforded for a full and deliberate investigation," referring in its note to our case of *Pelzer* v. *Hughes, 27* S. C., 408. When will it issue? The same work (10 Ency. Pleading and Practice), at page 890, answers this question in these words: "If the facts charged in the injunction bill show clearly that irreparable injury may be wrought, the Court will take cognizance of the case, and, if the circumstances require it, direct a trial by jury, in the meantime restraining the defendant by injunction, and when the right is established, make the injunction perpetual; and in such case the plaintiff need not by his bill show an incontestable legal title, but need only satisfy the Court that his claim is a substantial one and that there is ground for doubting the validity of the defendant's title * * * The Code, by allowing legal and equitable causes of action to be joined in one suit, has done away with the necessity of establishing the plaintiff's right at law before suing for an

injunction." It will be found on examination that the decisions of this Court rendered in *Seabrook* v. *Mostowitz*, 51 S. C., 433; *Cudd* v. *Calvert*, 54 S. C., 457, and also *Alston* v. *Limehouse*, 60 S. C., sustain the foregoing views. The last named cause sets out the doctrine that an order for temporary injunction, wherein are set forth the reasons of the Circuit Judge, must be carefully scrutinized so as to see what findings of fact and conclusions of law the Circuit Judge may announce as leading to his conclusion to grant or refuse the preliminary injunction, for these do not bind the parties to the action. All that is binding is the order granting or refusing the preliminary injunction. It must always be remembered that the Circuit Judge is not able to, and cannot, pass upon questions making up the merits of the action, in the application for a temporary injunction. Therefore, it will not be necessary for this Court, in view of the foregoing decisions, to pass upon any such questions made by the appeal from an order of the Circuit Judge granting a preliminary injunction. It seems to us that the Circuit Judge overlooked some of the allegations of the complaint in the cause at bar; for instance, the complaint alleges that the plaintiff by its deed reserved the right to pass over the lands of the defendant in order to have access to the railroad scales in controversy, and the further facts by its allegations that if the defendant should persist in its refusal to allow plaintiff to pass over its lands, to use said railroad scales, it will ruin its business. Now we must be understood as refusing to pass upon the merits of all these questions; we only refer to them as allegations of the complaint itself, whereby the plaintiff seeks to show how injurious and unconscionable it deems the action of the defendant in its alleged interference with the alleged rights of the plaintiff.

It seems to us, after a careful examination of the pleadings and the affidavits and the order appealed from, that the Circuit Judge was in error in setting aside the order of Judge Watts in granting the temporary injunction. And

we are careful not to refer to the alleged facts because they will be passed upon when the action comes on to be tried on its merits.

The judgment of this Court is, that the order made by his Honor, Judge Gage, setting aside the order for a temporary injunction as passed by Judge Watts, be reversed, and that the said order of Judge Watts be sustained as in full effect.

Petition for rehearing refused November 29, 1901, by following order:

PER CURIAM.  After a careful consideration of the petition, we have been unable to discover that any material fact or principle of law has either been overlooked or disregarded, and hence there is no ground for a rehearing.

While it is quite true that the position taken by respondent's counsel, that the order appealed from was not appealable, was not *formally* noticed in the opinion of the Court, yet the fact that the Court proceeded to consider the appeal on its merits, affords sufficient evidence that the Court was satisfied that the order was appealable, if for no other reason than if the said order was allowed to stand, the real merits of the case would have been concluded on a mere motion based upon affidavits.

It is, therefore, ordered, that the petition be dismissed and that the stay of the remittitur heretofore granted be revoked.