531 S.E.2d 518

CITY OF COLUMBIA, Appellant,

v.

PIC–A–FLICK VIDEO, INC.; James W. Keith, Jr., Chief Financial Officer of Pic–A– Flick Video, Inc., Respondents.

No. 25113.

Supreme Court of South Carolina.

Heard Dec. 1, 1999.

Decided April 24, 2000.

Dana M. Thye, of Office of the City Attorney, of Columbia, for appellant.

C. Rauch Wise, of Greenwood, for respondents.

TOAL, Justice:

Appellant the City of Columbia ("the City") sought a preliminary injunction against respondent Pic–A–Flick Video, Inc. ("Pic–A–Flick") for violating the provisions of the City's zoning ordinance governing the location of adult video stores. The trial court denied the injunction and the City appealed.[1]

### FACTUAL/PROCEDURAL BACKGROUND

City Ordinance 6–3146 to –3150.3 ("the Ordinance") regulates sexually oriented businesses within the City. Among the sexually oriented businesses regulated by the Ordinance are "adult video stores." The Ordinance defines "adult video stores" as "a commercial establishment which, *as one of its principal business purposes,* offers for sale or rental for any form of consideration any one or more of the following:

(a) Books, magazines, periodicals or other printed matter, or photographs, films, motion picture, video cassettes or video reproductions, slides, or other visual representations which depict or describe "specified sexual activities" or specified anatomical areas"; or

(b) Instruments, devices, or paraphernalia which are designed for use in connection with "specified sexual activities." ...

COLUMBIA CITY CODE § 6–3147 (emphasis added). Under the Ordinance, these adult video stores must meet certain distance

---

1. An order refusing an injunction is immediately appealable. S.C.Code Ann. § 14–3–330(4) (Supp.1999).

and zoning classification requirements in order to operate within the City.

Pic–A–Flick is a video sales and rental store with two locations within the City.[2] Since the early 1990s, Pic–A–Flick has sold and rented movies at each of these locations depicting "specified sexual activities" and "specified anatomical areas" as defined by the Ordinance. Pic–A–Flick's owner concedes that the movies fall under the Ordinance's definition. However, Pic–A–Flick denies that the sale or rental of such movies are a "principal business purpose" of the business.

These movies are located in a back room marked "Adult Videos" and Pic–A–Flick restricts access to the room by age. The back room occupies 294 out of 6,000 square feet at the Rosewood store and 434 of 13,000 square feet at the Main Street store. The Rosewood store carries approximately 250 covered movies out of 8,000 titles and the Main Street store carried approximately 400 adult movies out of 12,000 titles. Revenue generated by the adult movies represents 4.5% of Pic–A–Flick's total revenue for the two stores.

On August 3, 1998, Pic–A–Flick ran an advertisement in the State Newspaper for sales of their adult movies. That advertisement attracted the attention of the City's zoning administrator who visited the two locations and determined the two stores were adult video stores operating within the City without permits and in violation of distance restrictions. Pic–A–Flick initially appealed the zoning administrator's decision to the Zoning Board of Adjustment. Before a hearing on the appeal, the City filed suit seeking a preliminary injunction against Pic–A–Flick. As a result of the suit, Pic–A–Flick asked the Zoning Board of Adjustments to drop review of its appeal request until there was a decision on the injunction.

The trial court held a hearing on September 4, 1998 to address the injunction. On October 21, 1998, the trial court issued an order denying the injunction. The trial judge refused to grant the injunction because the City was unable to provide the court with its definition of "principal business purpose" as used in the Ordinance. The trial court also noted

2. One store is located at 2816 Rosewood Drive and the other at 4627 Main Street. Pic–A–Flick has vacated the Main St. store since the initiation of this action.

that the income generated by these movies represented a minimal portion of Pic–A–Flick's revenue and the City failed to show that Pic–A–Flick generated any negative secondary effects on the surrounding neighborhood. The trial court denied the City's motion to alter or amend the order. The City has appealed and the issue before this Court is:

Did the trial court properly refuse the injunction?

## LAW/ANALYSIS

### I. Denial of the Injunction

The City argues the trial court improperly denied an injunction against Pic–A–Flick. We disagree.

The granting of temporary injunctive relief is within the sound discretion of the trial court and will not be overturned absent an abuse of that discretion. *Fuller–Ahrens Partnership v. South Carolina Dept. of Highways and Public Transp.*, 311 S.C. 177, 427 S.E.2d 920 (Ct.App.1993). An abuse of discretion occurs where the trial court is controlled by an error of law or where the Court's order is based on factual conclusions without evidentiary support. *Stanton v. Town of Pawley's Island*, 309 S.C. 126, 420 S.E.2d 502 (1992). In order for a city to get an injunction for a zoning violation they must show: (1) that it has an ordinance covering the situation; and (2) that there is a violation of that ordinance. *See* 42 Am.Jur.2d *Injunctions* § 38 (1969). Here, the trial court found the City would likely be unable to show a violation of the Ordinance because the City failed to provide the trial court with a constitutional definition of "principal business purpose" that it uses in enforcing the Ordinance.

Our United States Supreme Court has held that businesses providing non-obscene, sexually explicit material are entitled to protection by the First and Fourteenth Amendment. *See Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976); *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986); *see also Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991)(recognizing that nude dancing also receives First Amendment protection). However, the Supreme Court has also recognized sexually-

oriented businesses may have negative secondary effects, such as an increase in crime, on their surrounding communities. *Young,* 427 U.S. at 71, 96 S.Ct. at 2452–53. In light of these secondary effects, the Supreme Court has allowed local governments to regulate sexually oriented businesses, not based on the content of the speech, but as a response to their negative impact on the community. *Id.* Zoning restrictions on store location, such as in the Ordinance, are one mechanism municipalities may use to regulate adult video stores.

■ The Ordinance classifies adult video stores by whether a "principal business purpose" of the store is the sale or rental of the specified merchandise. A definition of "principal business purpose" is not contained in the Ordinance. To determine "principal business purpose," the zoning administrator testified that he looks at whether a store promoted the adult material and whether the adult movies were kept in an area of restricted access. However, the City zoning administrator also testified that he would still consider Pic–A–Flick to be an adult video store if it did not advertise the adult videos and they were not kept in a restricted area. The City zoning administrator finally admitted under cross examination that the City's position is the sale of even one movie described by the Ordinance can make a business an adult video store and subject to the Ordinance.[3] Since the zoning administrator could not supply a clear definition of "principal business purpose," the trial court found that it was unlikely that the City would prevail in showing a zoning violation by Pic–A–Flick.

The trial court also relied on the evidence that adult videos represented less than 5% of Pic–A–Flick's revenue to find that the City was not likely to prevail on the merits of the action. This ruling was not, as the City mischaracterizes it, a ruling that by law less than 5% sales of adult videos is allowable under the Ordinance. Instead, the trial court found that unless the City could provide more guidance on the standard it

---

**3.** On cross examination, the City zoning administrator also acknowledged the popular movie "Titanic" contained a scene that would fall under the Ordinance's definition of covered material. As such, under the City's position testified to at trial, the rental of "Titanic" could qualify a business as an adult video store.

uses to enforce the Ordinance, he was not going to preliminarily enjoin Pic–A–Flick based on such minimal numbers.

We agree with the City's argument that the trial court should not have looked to see whether Pic–A–Flick created deleterious ("secondary") effects in the neighborhood. Municipalities do not have to show negative secondary effects in order to enforce adult zoning provisions. As this Court held in *Restaurant Row Associates v. Horry County*, 335 S.C. 209, 220, 516 S.E.2d 442, 448 (1999):

> Adult businesses cannot exclude themselves from legitimate zoning regulation by providing expert testimony that they do not currently produce negative secondary effects. Local governments have the power to zone the location of adult businesses without any individualized showing the businesses produce negative secondary effects.

Here, Pic–A–Flick cannot rely on a lack of secondary effects evidence to argue that they are not a sexually-oriented business. However, the trial court's error is harmless in that it correctly found that the Ordinance did not provide a definition for "a principal business purpose" and the City zoning administrator could not tell the court how it enforced that provision of the Ordinance.

The trial court made no errors of law that would justify the reversal of its decision not to grant the injunction. While the trial court may have erroneously based its refusal to enjoin Pic–A–Flick on the fact that Pic–A–Flick did not create deleterious secondary effects, reversal of this error would not change the outcome of the trial court's decision denying the injunction. If there isn't a definition of "principal business purpose" that the City can articulate to the trial court, the City cannot argue that businesses such as Pic–A–Flick have as a "principal business purpose" the retail of the covered material.

## II. Principal Business Purpose

As noted above, the Ordinance defines "adult video stores" as "a commercial establishment which, as one of its principal business purposes, offers for sale or rental for any form of consideration" covered material as defined by the Ordinance. The City Code itself does not contain a definition of "principal

business purpose." Furthermore, no South Carolina court has construed the meaning of this phrase. Language from the City Code provides some limited guidance on the issue:

> A commercial establishment may have other principal business purposes that do not involve the offering for sale or rental of material depicting or describing "specified sexual activities" or "specified anatomical areas" and still be categorized as adult bookstore or adult video store. Such other business purposes will not serve to exempt such commercial establishment from being categorized as an adult bookstore or adult video store so long as one of its principal business purposes is the offering for sale or rental for consideration the specified materials which depict or describe "specified sexual activities" or "specified anatomical areas."

COLUMBIA CITY CODE § 6–3147.

Justice Scalia's dissent in *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) provides one definition of "principal business purpose." While the majority opinion did not discuss the term, Justice Scalia opined:

> In addition, in order to qualify for regulation under the ordinance the business that provides such live nudity or such sexually explicit depictions or descriptions must do so "as one of its principal business purposes"... [T]he phrase "as one of its principal business purposes" can connote that the material containing the specified depictions and descriptions does not merely account for a substantial proportion of sales volume but is also intentionally marketed as material of that character.
>
> All of the establishments at issue, therefore, share the characteristics that they offer (1) live nudity or hardcore sexual material, (2) as a constant, intentional objective of their business. But there is still more. With the single exception of "adult motion picture theater," the descriptions of all the establishments at issue contain some language that suggests a requirement that the business hold itself forth to the public precisely as a place where sexual stimulation of the described sort can be obtained.... A business can hardly have as a principal purpose a line of commerce it does not even promote.... Given these indications of the

importance of "holding forth" contained in all except one of the definitions, it seems to me very likely—especially if that should be thought necessary to sustain the constitutionality of the measure—that the Dallas ordinance in all its challenged applications would be interpreted to apply only to businesses that not only (1) offer live nudity or hardcore sexual material, (2) as a constant and intentional objective of their business, but also (3) seek to promote it as such. . . .

*Id.* 493 U.S. at 260–61, 110 S.Ct. at 623. Justice Scalia's approach could be one analysis the City may adopt for dealing with the First Amendment issues inherent in the Ordinance. Such an analysis would allow businesses such as Pic–A–Flick to rent movies such as "Titanic" without fear of violating the Ordinance because the sexually explicit nature of some of the content of this movie is not "promoted" as material that is covered by the Ordinance. Also, Pic–A–Flick would be able to operate a back room containing the covered material as long as it did not hold itself out to the public as a place where such material can be obtained.[4]

### CONCLUSION

■ When confronted with First Amendment issues, this Court is guided by precedent from the United States Supreme Court. *See Centaur, Inc. v. Richland County,* 301 S.C. 374, 392 S.E.2d 165 (1990). As we stated in *Harkins v. Greenville County,* 340 S.C. 606, 533 S.E.2d 886 (2000), this Court will uphold those zoning laws that comport with the Supreme Court's guidelines as well as with our own case law. In the current matter, the City's administration of their ordinance fails to meet those standards so we must find in favor of the Respondents.

---

4. We note that the City zoning administrator testified that he has "had occasion to look at" Justice Scalia's proposed test. However, his testimony is clear that the City does not rely on this test when deciding whether a store had as a "principal business purpose" the sale of covered material. At best, Justice Scalia's factors were some of many different very malleable elements the City used to decide whether a business was violating the Ordinance. Such an approach by the City is not sufficient to satisfy constitutional requirements.

Based on the foregoing, the decision of the trial court is **AFFIRMED**.

FINNEY, C.J., MOORE, WALLER, and BURNETT, JJ., concur.