THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED 
 ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR. 
 
THE STATE OF SOUTH CAROLINA
 In The Court of Appeals

 
 
 
 
 South Carolina Department of Social Services, Respondent,
 
 
 

v.
 
 
 
 
 Angela Almeida and Bright Ideas Child Development Center, Defendants,
 of whom Bright Ideas Child Development Center is Appellant.
 
 
 

Appeal From Lexington County
  Richard W. Chewning, III, Family Court Judge

Unpublished Opinion No. 2004-UP-437
 Heard June 9, 2004  Filed July 26, 2004

VACATED

 
 
 
 
 Jack B. Swerling, Robert Sam Phillips, and Harry L. Goldberg, all 
 of Columbia, for Appellant.
 Montford Shuler Caughman, of Lexington, for Respondent.
 
 
 

PER CURIAM:  Bright Ideas Child Development 
 Center (Bright Ideas) appeals a family court order permanently enjoining its 
 operation as a child daycare facility on the ground the injunction is unsupported 
 by any evidence.  We agree and vacate the order of the family court imposing 
 the permanent injunction.
FACTS
On January 28, 2003, Angela Almeida, the owner 
 and director of Bright Ideas, left the toddler room unattended to run errands.  
 At the same time, three of the five remaining caregivers left their individual 
 rooms unattended. [1]   A toddler was injured in Almeidas absence. 
 [2]   Bright Ideas also had a history of repeated regulatory infractions, 
 many concerning staff training and supervision of children. 
On February 3, 2003, the Lexington County Department of Social Services initiated 
 an action to enjoin Bright Ideas and Angela Almeida from providing daycare services.  
 Prior to the scheduled hearing, however, DSS and Bright Ideas reached an accommodation 
 allowing the daycare to continue operating.  The parties agreed that if Angela 
 Almeida was enjoined from participating in any daycare activities, Bright Ideas 
 could continue to operate with a new owner and director.  Angela Almeidas husband, 
 Tim, was named owner/operator and an existing employee became the director.  
 It was also agreed that Bright Ideas, DSS, and their attorneys would ensure 
 appropriate child-to-staff ratios and staffing compliance, including reductions 
 in child population as deemed necessary and that DSS would monitor the facility 
 every day.  By order dated February 4, 2003, the family court adopted the agreement.  
 The order also stated, the [r]uling on injunction shall be held in abeyance 
 pending strictest and fullest compliance with above agreement or this matter 
 will be brought back before the Court. 
A dispute soon arose as to appropriate child-to-staff ratios, and Bright Ideas 
 declined to sign a corrective action plan requiring it to limit the number of 
 children under the age of two and reduce its overall child daycare population.  
 On February 11, 2003, DSS moved for a hearing on the original request for injunctive 
 relief because Bright Ideas failed to comply with the agreement respecting reductions 
 in child daycare population. 
After a hearing, the family court issued an order finding Bright Ideas posed 
 a substantial threat of harm to the public and children of Lexington County 
 in its former or present configuration. As a result, the court permanently 
 enjoined Angela Almeida and Bright Ideas from providing daycare services. 
 [3]    Bright Ideas appeals.
STANDARD OF REVIEW
The decision to grant injunctive relief rests within 
 the sound discretion of the trial court and will not be overturned absent an 
 abuse of that discretion. City of Columbia v. Pic-A-Flick Video, Inc., 
 340 S.C. 278, 282, 531 S.E.2d 518, 520-21 (2000). An abuse of discretion occurs 
 when a trial courts decision is unsupported by the evidence or controlled by 
 an error of law. County of Richland v. Simpkins, 348 S.C. 664, 668, 
 560 S.E.2d 902, 904 (Ct. App. 2002).
DISCUSSION
Bright Ideas argues the family court erred in entering a permanent injunction 
 barring the daycare from future operations because there is no evidence to support 
 the injunction.  As the basis for this assertion, Bright Ideas claims it has 
 complied with the DSS requirements by severing all ties with Angela Almeida 
 and by operating without incident under its new management.  
In analyzing this issue, it is instructive to consider the underlying purpose 
 for injunctions.  The inherent purpose behind the equitable remedy of a temporary 
 injunction is to preserve the status quo.  Simpkins, 348 S.C. at 671, 
 560 S.E.2d at 905 ([A] temporary injunction is [used] to preserve the subject 
 of controversy in the condition which it is at the time of the Order until opportunity 
 is offered for full and deliberate investigation and to preserve the existing 
 status during litigation. (quoting County Council of Charleston v. Felkel, 
 244 S.C. 480, 483-84, 137 S.E.2d 577, 578 (1964))).  In contrast, [a] permanent 
 injunction is issued primarily to prevent future acts of harm and, unless specified 
 otherwise in the order, is unlimited in respect of time.  Bear v. Iowa Dist. 
 Court for Tama County, 540 N.W.2d 439, 441 (Iowa 1995);  see 42 Am. 
 Jur. 2d Injunctions § 2 (2000) (Injunctive relief is designed to meet 
 a real threat of a future wrong or a contemporary wrong of a nature likely to 
 continue or recur.  Whether interlocutory or final, injunctive relief is ordinarily 
 preventive or protective in character and restrains actions that have not yet 
 been taken.  It is generally not intended to redress, or punish for, past wrongs.).  
 Furthermore, [p]ermanent injunctions are permanent so long as the conditions 
 which produce the injunction remain permanent.  Bear, 540 N.W.2d at 
 441 (quoting Condura Constr. Co. v. Milwaukee Bldg. & Constr. Trades 
 Council AFL, 99 N.W.2d 751, 755 (Wis. 1959)).   
This distinction is significant when compared with the terms of the statute 
 that was the basis for the injunction.  DSS is authorized by section 20-7-3010 
 to seek injunctive relief to prohibit the operation of a childcare facility 
 (1) when a facility is operating without a license or statement of registration; 
 (2) when there is any violation of this subarticle or of the regulations promulgated 
 by the department which threatens serious harm to children in the childcare 
 facility; (3) when an operator has repeatedly violated this subarticle or the 
 regulations of the department.  S.C. Code Ann. § 20-7-3010 (Supp. 2003).  In 
 cases where, as here, the injunction sought is specifically authorized by statute 
 and the party seeking the injunction is a government entity, the government 
 entity must simply show (1) there is a statutory provision covering the situation; 
 and (2) that there is a violation of that provision. Simpkins, 348 S.C. 
 at 669, 560 S.E.2d at 905. In such circumstances, no showing of irreparable 
 harm need be made by the party seeking the injunction, nor must the court consider 
 whether the injunction is in the public interest. Id. at 669, 560 S.E.2d 
 at 905 (quoting 42 Am. Jur. 2d Injunctions § 23 (2000)).
 In order to obtain its requested injunction against Bright Ideas, DSS needed 
 to show evidence which would tend to establish any one of the three enumerated 
 grounds prescribed by section 20-7-3010.  As evidenced by the family courts 
 order, DSS pursued the injunction under the second subsection, when there is 
 any violation of this subarticle or of the regulations promulgated by the department 
 which threatens serious harm to children in the childcare facility.  
 S.C. Code Ann. § 20-7-3010 (2) (Supp. 2003) (emphasis added).  By using the 
 term threatens, we believe the General Assembly intended to abate future misconduct.  
 This interpretation is consistent with the purpose of a permanent injunction, 
 i.e., to prevent future acts of harm.  See Strother v. Lexington 
 County Recreation Commn, 332 S.C. 54, 62, 504 S.E.2d 117, 121 (1998) (The 
 cardinal rule of statutory construction is to ascertain and effectuate the legislative 
 intent whenever possible.); Hitachi Data Sys. Corp. v. Leatherman, 309 
 S.C. 174, 178, 420 S.E.2d 843, 846 (1992) (stating the words of the statute 
 must be given their plain and ordinary meaning without resorting to subtle or 
 forced construction to limit or expand the statutes operation).    
With these principles in mind, we turn to the facts 
 of the instant case.  During the period after DSS and Bright Ideas entered into 
 the agreement for bringing the center into compliance with DSS standards and 
 regulations, which were incorporated into an order of the family court, there 
 is no evidence that Bright Ideas failed to comply with DSS instructions or that 
 the DSS inspections indicated any problems with the quality of care provided 
 at Bright Ideas.  Indeed, the testimony of the DSS officials in the record before 
 us indicates the contrary.  When asked if there were any problems after Bright 
 Ideas began operating under the strict oversight of DSS, the DSS investigators 
 and other officials all indicated that the center was in full compliance with 
 the safety plan.  The only witness who could articulate a reason why Bright 
 Ideas, in its operation under the safety plan, should not be allowed to remain 
 open, was Helen Lebby, assistant director for childcare licensing and regulation 
 at DSS.  She testified that things [at Bright Ideas] are going to be fine as 
 long as [the Bright Ideas owner and operators] know that [DSS] will be out there 
 every day the way [we] are now . . . .  However, this concern that Bright Ideas 
 would lapse out of compliance with the safety plan if routine daily inspections 
 were discontinued is based solely on speculation.  There is no evidence in the 
 record to establish that Bright Ideas, under the current management, will operate 
 in violation of section 20-7-3010.
Considering the terms of the statute and the purpose 
 of a permanent injunction, we find no evidence to support the family courts 
 finding that Bright Ideas present configuration poses a substantial threat 
 of harm to the public at large and the children of Lexington County.  Significantly, 
 the court did not mention that Bright Ideas violated the terms of the parties 
 agreement, but instead, appears to have relied solely on Almeidas actions on 
 January 28, 2003.  Because Bright Ideas terminated Almeida as the director and 
 complied with DSS requirements, the taint of that incident was cured and there 
 was no longer a nexus between the present operation and the threat of harm.
Our decision should in no way be interpreted that we minimize the misconduct 
 on the part of Bright Ideas.  To be sure, we find deeply disturbing the carelessness 
 and disregard for safety on the part of the Bright Ideas staff that contributed 
 to the injury of a child entrusted to their care.  We note, however, that DSS 
 did not immediately pursue an injunction based on this egregious incident. 
 [4]   If the paramount concern was the threat of harm to the children attending 
 Bright Ideas at the time of the incident, DSS could have sought the injunction 
 to cease any further operation. Instead, DSS held in abeyance its action for 
 an injunction and permitted Bright Ideas to continue operating, with some of 
 the original staff, based upon the agreement guidelines.  Relying on the assurances 
 of this agreement, Bright Ideas complied with its terms and took substantial 
 corrective action.  Although Bright Ideas refused to sign the corrective action 
 plan, signing the plan was not a requirement of the original agreement.
In light of the procedural posture of the injunction 
 at issue, our inquiry must be confined to the question of the adequacy of the 
 findings underlying the permanent injunction with respect to the present configuration 
 of Bright Ideas, not the former configuration at the time of the incident.  
 On that narrow question alone, the lack of any evidence that Bright Ideas failed 
 to comply with the DSS-imposed and court-approved safety plan compels us to 
 find the injunction was improvidently granted.  
For these reasons, the family courts order permanently enjoining Bright Ideas 
 from operation as a daycare center is
VACATED.
HEARN, C.J., STILWELL, J., and CURETON, A.J., concur.

 
 
 [1] Two of the caregivers who left their rooms unattended were released 
 from their jobs.  A third caregiver was placed on administrative leave pending 
 resolution of her employment status by DSS. 

 
 [2]  The child received at least thirteen bites 
 to the head and face. 

 
 [3]   Bright Ideas has been closed since April 
 11, 2003.

 
 [4]   If DSS had immediately moved 
 after the incident to enjoin the operation of Bright Ideas, we would be presented 
 with an entirely different case.  This incident alone would have been sufficient 
 to enjoin the operation of the daycare center.  Bright Ideas would have then 
 been required to establish a change of circumstances sufficient for the family 
 court to vacate or modify the injunction.  See Brady v. Anders, 
 294 S.C. 342, 343, 364 S.E.2d 467, 468 (1988) (A continuing injunction is 
 subject to modification upon a showing of significantly changed factual circumstances 
 . . . . When evidence of a change in facts or the law is presented, the court 
 which rendered the permanent injunction has the inherent power or authority 
 to vacate or modify the injunction.) (citations omitted).