THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
 THE STATE OF SOUTH CAROLINA
 In The Court of Appeals 

 
 
 
 Kenneth A. Marshall, Vol-World, LLC, and Springerland, Inc., Respondents, 
 
 
 

 
 
v.

 
 
 
 John W. Pence, Jerry B. Massey, Planets Edge, Inc., Joseph Hickman and Annie Hickman, Defendants,
 Of whom John W. Pence, Jerry B. Massey, and Planets Edge, Inc. are the, Appellants.
 
 
 

Appeal From Charleston County
 Thomas L. Hughston, Jr., Circuit Court Judge

Unpublished Opinion No. 2005-UP-370
 Heard April 5, 2005  Filed June 7, 2005

 REVERSED

 
 
 
 William B. Jung, of Mt. Pleasant, for Appellants.
 Saul Gliserman and O. Grady Query, of Charleston, for Respondents.
 
 
 

SHORT, J.:  This is an appeal from a trial courts grant of a preliminary injunction.  We reverse.
FACTS
 Joseph and Annie Hickman own 32A Centre Street in Folly Beach, South Carolina.  From 1997 until 2003, the Hickmans leased the property to Ken (Marshall) and Mary Marshall through the Marshalls corporation, Springerland, Inc., for use as a restaurant and bar named Planet Follywood.  Upon the Marshalls petition for divorce, the family court issued a temporary order, awarding Mary Marshall sole control over the operations of Planet Follywood.
In October 2003, John Pence, a Planet Follywood patron, and Marshall discussed the potential of forming a partnership or association to run Planet Follywood.  Pence introduced Marshall to Rick Neighbors as a potential third partner because Neighbors had started, managed and sold a number of successful businesses.  Marshalls primary concern was having a name other than his listed as the owner of the business because he had unpaid tax liens owed to the IRS.  However, the discussions ended because Marshall did not want Neighbors as a partner.  After Marshall approached Pence a second time in November 2003 about forming a business relationship, Pence suggested his son-in-law Jerry Massey, manager of a local restaurant franchise, as the third partner.  Marshall, Pence, and Massey met at Pences home later that month to discuss the organization of the business and inspect Springerlands financial books.  Because of Marshalls IRS difficulties, Massey agreed to put all necessary permits and licenses in his name, including the lease on the 32A Centre Street property.  Massey also agreed to handle the day-to-day operations of the restaurant and bar because Marshall expressed a desire to continue his job in construction; however, Marshall wanted a portion of the monthly proceeds from the operation of the new business. 
At trial, Marshall testified he simply asked Pence to help him meet the past due rental amounts so he could take over the restaurant once his divorce proceedings were final.  He stated he never intended to form a partnership with Pence or Massey, but he admits he discussed a business association with them at some point.     
The Hickmans notified Marshall in early December that Mary Marshall was behind on her rent payments.[1]  They began formal eviction proceedings against Springerland on December 22, 2003, though the proceedings [were] never concluded and . . . therefore [eventually] deemed by [the] court to be null and void.  In addition, the IRS ordered Planet Follywood to close at the end of December 2003 because of Springerlands unpaid tax liens.  Subsequently, Mary Marshall threw a going out of business and customer appreciation party on December 25, 2003.  
On December 16, 2003, Massey, Pence, and Marshall met with the Hickmans to discuss the new lease on the property.  At that meeting, Massey paid $3,200 to the Hickmans for December 2003 and January 2004 rent on the property.  Also during the meeting, Joseph Hickman signed a document, witnessed by Annie Hickman and Massey and in the presence of Marshall and Pence, attesting to his receipt of rent for the months of Dec. 03 and January 04 from the new tenants of Planet Follywood 32 Center St Folly Beach SC 29439.  The new lease will be prepared in ap[p]rox two weeks by atty Ben Peeples.  New tenants are [sic] Jerry Massey.  Massey testified that Marshall was present for the meeting, the payment of the rent, and the signing of the temporary lease agreement from the Hickmans to Massey; however, Marshall testified that he was not at the meeting.  Shortly thereafter, Massey formed a corporation named Planets Edge, Inc. for purpose of operating the new business.  Planets Edge signed a one-year lease with the Hickmans for 32A Centre Street that contained an option to renew until December 2009. 
While Massey, Pence, their respective spouses, and occasionally Marshall prepared the restaurant for opening, Marshalls divorce became final.  As a result of the settlement, on January 15, 2004, Mary Marshall paid Marshall $50,000, satisfied the IRS tax lien against Springerland, and surrendered her interest in Springerland to Marshall.[2]  Massey testified that Marshall contacted Pence on January 17, 2004 and scheduled a meeting at the property for the following day, where he informed Massey that he did not think this partnership [was] going to work because Massey was too corporate for a family business like Planet Follywood.  Marshall stated to both Massey and Pence that he would not do business with either of them in the future.  Unbeknownst to Pence and Massey until that day, Marshall had applied for liquor licenses and other permits on January 15 and 16, 2004 in his name and the name of his new corporation, Vol-World, LLC, thereby preventing Appellants from obtaining permits for the same address in their corporate name.
To protect their investment, Massey and Pence contacted legal counsel, and after notifying the Hickmans, changed the locks on the 32A Centre Street building.  Respondents[3] instituted a breach of contract action against the Hickmans.  Respondents also brought an action for intentional interference with contractual relations, conversion, trespass, and forcible entry and detainer against Appellants.  In their amended complaint, Respondents withdrew the breach of contract claim against the Hickmans and added a request for specific performance of the 1997 lease between Springerland and Hickman.  They also requested injunctive relief awarding them possession of 32A Centre Street and the return of any personal property belonging to Springerland left inside the premises.   
From January 2003 until the trial court ordered the preliminary injunction on February 27, 2004, Appellants remained in possession of the 32A Centre Street premises and were current on all rent due for the premises.  Marshall also was current on all rent due for the premises.  Following the hearing on February 27, 2004, the trial court ordered Appellants to vacate the premises and immediately grant access to the said premises to Respondents, once Respondents posted a $3,200 attachment bond.  The trial court held the following:

 [T]here was [sic] discussions to lead up to the formation of a partnership, but a partnership was never formed.  Secondly, as far as the competing leases are concerned, I think that the first lease is still valid and it is enforced [sic] and therefore Ill grant the injunction, the temporary injunction, turning the property over to the plaintiff.

This appeal followed.         
LAW/ANALYSIS
Appellants claim the trial court erred in awarding a preliminary injunction to Respondents because Appellants were in actual possession under color of right.  We agree. 
Actions for injunctive relief are equitable.  Doe v. South Carolina Med. Malpractice Liab. Joint Underwriting Assn, 347 S.C. 642, 645, 557 S.E.2d 670, 672 (2001).  In equitable actions, we may review the record and make findings of fact in accordance with our own view of the preponderance of the evidence.  Id.  Pursuant to the main purpose rule, in actions praying for both money damages and equitable relief, characterization of the action as equitable or legal depends on the plaintiffs main purpose in bringing the action.  Id. (quoting Floyd v. Floyd, 306 S.C. 376, 380, 412 S.E.2d 397, 399 (1991)).  Marshalls main purpose in instituting this action was to restore the status quo.  Thus, the main purpose of Marshalls action was equitable in nature.  However, [t]he granting of temporary injunctive relief is within the sound discretion of the trial court and will not be overturned absent an abuse of that discretion.  City of Columbia v. Pic-A-Flick Video, Inc., 340 S.C. 278, 282, 531 S.E.2d 518, 520 (2000).  An abuse of discretion occurs when a trial courts decision is unsupported by the evidence or controlled by an error of law.  Id. at 282, 531 S.E.2d at 521.  
Ordinarily the purpose of a temporary injunction is merely to preserve the existing status during the litigation, and as a general rule, subject to some exceptions, it will not be allowed to have the effect of transferring the possession of property from a litigant in possession to another who claims the right to possession.  Atlantic Coast Lumber Corp. v. E.P. Burton Lumber Co., 89 S.C. 143, 145, 71 S.E. 820, 820 (1911).  In case of property rights the purpose is to preserve the status quo pending litigation.  County Council of Charleston v. Felkel, 244 S.C. 480, 484, 137 S.E.2d 577, 578 (1964).  If the right of possession is in dispute between two parties, one of whom is in actual possession under a claim or color of right, injunction will not, as a rule, lie to transfer possession to the other party.  43A C.J.S. Injunctions § 127 (2004) (emphasis added). 
Appellants were in actual possession of the property prior to February 27, 2004 when the temporary injunction was issued.  Although there was some debate as to Marshalls intent to enter into a partnership and which of the parties leases was primary, there was some evidence that Appellants were in possession of 32A Centre Street by color of right.  See 43A C.J.S. Injunctions § 127 (2004).  Marshall requested that Pence help him financially to get the business operating again and possibly entered into an oral partnership agreement with Pence and Massey.  Also, Mary Marshall failed to make rent payments on the lease and the Hickmans executed eviction proceedings.  Further, Joseph Hickman handwrote a note to Massey, in the presence of his wife, Pence, and arguably Marshall to the effect that Massey was the New Tenant of 32A Centre Street and had paid rent for December 2003 and January 2004.  The Hickmans and Planet Edge entered into a lease agreement on January 16, 2004.  This evidence, whether disputed or not, prevents the trial court from transferring possession, thereby preserving the status quo.          
Furthermore, as the Appellants argue, the issue of title is a legal issue to be tried by a jury.  While it is true a suit for injunction invokes the equitable jurisdiction of the court, yet if the defendant claims paramount title to the land in dispute and the subject of the equitable proceeding, which title if confirmed in the defendant would defeat the equitable remedy of injunction, then the issue of title should be tried first, and it is a legal issue to be tried by a jury.  Santee River Hardwood Co. v. Hyman, 44 F.Supp. 857, 859-60 (1942).  Thus, the trial court erred in granting a temporary injunction based on its determination that the Springerland lease will be determined to have priority over the subsequent lease on the premises. 
REVERSED.
BEATTY, J., concurs.
ANDERSON, J., concurs in result only in a separate opinion. 
ANDERSON, J. (concurring in result only):  I disagree with the analysis and explication in regard to the issuance and propriety of a temporary (preliminary) injunction.  It is necessary and essential to academically review the law extant on the efficacy of temporary injunctions.
TEMPORARY (PRELIMINARY) INJUNCTIONS
An action for an injunction is equitable.  Blanks v. Rawson, 296 S.C. 110, 370 S.E.2d  890 (Ct. App. 1988); accord Richland County v. Kaiser, 351 S.C. 89, 567 S.E.2d 260 (Ct. App. 2002).  An injunction is not granted as a matter of legal right, but is granted when a review of all of the evidence establishes that it is necessary to prevent irreparable harm.  Metts v. Wenberg, 158 S.C. 411, 155 S.E. 734 (1930); Transcontinental Gas Pipe Line Corp. v. Porter, 252 S.C. 478, 167 S.E.2d 313 (1969); see also Shapemasters Golf Course Builders, Inc. v. Shapemasters, Inc., 360 S.C. 473, 602 S.E.2d 83 (Ct. App. 2004) (finding appellant failed to show irreparable harm).  Injunctive relief is a drastic remedy which should be used cautiously.  Sprouse v. Winston, 212 S.C. 176, 46 S.E.2d 874 (1948); see Scratch Golf Co. v. Dunes West Residential Golf Properties, Inc., 361 S.C. 117, 603 S.E.2d 905 (2004).  The remedy of injunction is a drastic one and should be cautiously applied only when legal rights are unlawfully invaded or legal duties are willingly or wantonly neglected.  Seabrook Island Prop. Owner Assn v. Marshland Trust, Inc., 358 S.C. 655, 666, 596 S.E.2d 380, 385 (Ct. App. 2004) (internal quotation marks omitted) (quoting LeFurgy v. Long Cove Club Owners Assn, Inc., 313 S.C. 555, 558, 443 S.E.2d 577, 578 (Ct. App. 1994)).  
South Carolina Code Ann. sections 15-55-10 through 100 (1976) formerly governed injunctions in this State.  However, upon the advent of the South Carolina Rules of Civil Procedure on July 1, 1985, these code sections were repealed.  Rule 65, SCRCP, now governs injunctions.  
Transcontinental Gas Pipe Line Corporation v. Porter, 252 S.C. 478, 167 S.E.2d 313 (1969), is the leading South Carolina case on temporary injunctions.  There, our supreme court edified: 

 The two essential conditions to the granting of a temporary injunction were thus stated in Childs v. City of Columbia, 87 S.C. 566, 568, 70 S.E. 296, 297, 34 L.R.A.,N.S., 542: First, the complaint must allege facts which appear to be sufficient to constitute a cause of action for injunction; and, second, on the entire showing from both sides it must appear, in view of all the circumstances, that the injunction is reasonably necessary to protect the legal rights of the plaintiff pending the litigation.

 It is well settled that, in determining whether a temporary injunction should issue, the merits of the case are not to be considered, except in so far as they may enable the court to determine whether a prima facie showing has been made.  When a prima facie showing has been made entitling plaintiff to injunctive relief, a temporary injunction will be granted without regard to the ultimate termination of the case on the merits.  Alderman & Sons Co. v. Wilson, 69 S.C. 156, 48 S.E. 85.

 Injunctive relief, under the foregoing section, is a matter that rests in the sound discretion of the judge to whom application is made and, as stated in Alston v. Board of Health, 93 S.C. 553, 77 S.E. 727, while a judge, at chambers, cannot Finally decide anything as to the merits, he can and ought to look into the merits, whether they present issues of law or fact, and Consider them to the extent necessary to enable him to exercise his discretion wisely.

 We have held that a temporary injunction may properly issue to protect rights acquired under an easement.  Darlington Oil Company v. Pee Dee Oil & Ice Company, 62 S.C. 196, 40 S.E. 169; Alderman & Sons Co. v. Wilson, supra, 69 S.C. 156, 48 S.E. 85; Marion County Lumber Co. v. Tilghman Lumber Co., 75 S.C. 220, 55 S.E. 337.

Transcontinental, 252 S.C. at 480-81, 167 S.E.2d at 315.
Powell v. Immanuel Baptist Church, 261 S.C. 219, 199 S.E.2d 60 (1973), amplified Transcontinental by inculcating the quintessence of temporary injunctions: 

 It is implicit in the language of the statute, and the authorities agree, that the sole purpose of a temporary injunction is to preserve the status quo, and thus avoid possible irreparable injury to plaintiff, pending the litigation.  42 Am.Jur.2d, Injunctions, Sec. 13 (1969); County Council of Charleston v. Felkel, 244 S.C. 480, 137 S.E.2d 577 (1964).

Powell, 261 S.C. at 221, 199 S.E.2d at 61 (emphasis added).  This point was reiterated by Justice Nesss dissent in Universal Life Church, Inc., v. City of North Charleston, 277 S.C. 81, 83, 282 S.E.2d 607, 608 (1981): A temporary injunction is properly issued to preserve the status quo, and thus avoid possible irreparable injury to plaintiff, pending the litigation.  (Emphasis supplied).  Powell v. Immanuel Baptist Church, et al., 261 S.C. 219, 221, 199 S.E.2d 60 (1973).  
In Helsel v. City of North Myrtle Beach, 307 S.C. 29, 413 S.E.2d 824 (1992), the South Carolina Supreme Court elucidated:

 The sole purpose of a temporary injunction is to avoid irreparable injury to a plaintiff pending final adjudication of a case.  Powell v. Immanuel Baptist Church, 261 S.C. 219, 221, 199 S.E.2d 60, 61 (1973).  When a court is requested to issue a temporary injunction it may consider the merits of a case to the extent necessary to determine whether a temporary injunction is appropriate.  Roberts v. Union County Board of School Trustees, 284 S.C. 299, 301, 326 S.E.2d 163, 164 (Ct. App. 1985).  Once a prima facie showing has been made entitling the plaintiff to injunctive relief, a temporary injunction will be granted without regard to the ultimate termination of the case on the merits.  Columbia Broadcasting System, Inc. v. Custom Recording Co., Inc., 258 S.C. 465, 471-72, 189 S.E.2d 305, 308 (1972).  A temporary injunction is made without prejudice to the rights of either party pending a hearing on the merits, and when other issues are brought to trial, they are determined without reference to the temporary injunction.  Alston v. Limehouse, 60 S.C. 559, 569, 39 S.E.2d 188, 191 (1901).  

Helsel, 307 S.C. at 32, 413 S.E.2d at 826.  
More recently, our supreme court noted:

 The sole object of a temporary injunction is to preserve the subject of the controversy in its condition at the time of the order until opportunity is offered for full and deliberate trial investigation.  Epps v. Bryant, 218 S.C. 359, 62 S.E.2d 832 (1950).  Temporary injunctions are interlocutory, tentative, and impermanent and are superseded by the final judgment rendered on the merits.  42 AM.JUR.2D Injunctions § 294 (2000).  Thus, temporary injunctions remain in force only until, and expire upon, the entry of final judgment and are not enforceable after the final judgment has been entered.  Id.  

Curtis v. State, 345 S.C. 557, 569, 549 S.E.2d 591, 597 (2001).
In Zabinski v. Bright Acres Associates, 346 S.C. 580, 553 S.E.2d 110 (2001), the court observed:

 The granting of temporary injunctive relief is within the sound discretion of the trial court and will not be overturned absent an abuse of that discretion.  City of Columbia v. Pic-A-Flick Video, Inc., 340 S.C. 278, 531 S.E.2d 518 (2000).  An abuse of discretion occurs where the trial court is controlled by an error of law or where the trial courts order is based on factual conclusions without evidentiary support.  Id.  The sole purpose of a temporary injunction is to preserve the status quo and thus avoid possible irreparable injury to a party pending litigation.  Powell v. Immanuel Baptist Church, 261 S.C. 219, 199 S.E.2d 60 (1973). 

Zabinski, 346 S.C. at 601, 553 S.E.2d at 121.  
The Fourth Circuit Court of Appeals, in Safety-Kleen, Inc. (Pinewood) v. Wyche, 274 F.3d 846 (4th Cir. 2001), instructed:

 In evaluating whether to grant a preliminary injunction, a court should consider (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied; (2) the likelihood of harm to the defendant if the injunction is granted; (3) the likelihood that the plaintiff will succeed on the merits; and (4) the public interest.  See Direx Israel, Ltd. V. Breakthrough Med. Corp., 952 F.2d 802, 812 (4th Cir. 1991).  The likelihood of irreparable harm to the plaintiff is the first factor that a court should consider.  See id.  A courts next step is to balance the likelihood of harm to the plaintiff against the likelihood of harm to the defendant.  See Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189, 195 (4th Cir. 1977).  If the harm balance tips decidedly in favor of the plaintiff, a preliminary injunction will be granted if the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation.  Rum Creek Coal Sales, Inc. v. Caperton, 926 F.2d 353, 359 (4th Cir. 1991) (internal quotation marks and citation omitted).  In other words, the plaintiffs case must at bottom present a substantial question.

Safety-Kleen, 274 F.3d at 858-59.
In County of Richland v. Simpkins, 348 S.C. 664, 560 S.E.2d 902 (Ct. App. 2002), this Court propounded:

 A plaintiffs entitlement to an injunction requires the complaint to allege facts sufficient to constitute a cause of action for injunction while also showing an injunction must be reasonably necessary to protect the legal rights of the plaintiff pending in the litigation.  Transcontl Gas Pipe Line Corp. v. Porter, 252 S.C. 478, 480-81, 167 S.E.2d 313, 315 (1969).  Generally, to obtain an injunction, a party must demonstrate irreparable harm, a likelihood of success on the merits, and an inadequate remedy at law.  Roach v. Combined Util. Commn, 290 S.C. 437, 442, 351 S.E.2d 168, 170 (Ct. App. 1986). 

Simpkins, 348 S.C. at 669, 560 S.E.2d at 904
The court, in FOC Lawshe Limited Partnership v. International Paper Company, 352 S.C. 408, 574 S.E.2d 228 (Ct. App. 2002), stated:

 A plaintiffs entitlement to an injunction requires the complaint to allege facts sufficient to constitute a cause of action for an injunction while establishing that an injunction is reasonably necessary to protect the legal rights of the plaintiff during the litigation.  Transcontinental Gas Pipe Line Corp. v. Porter, 252 S.C. 478, 480-81, 167 S.E.2d 313, 315 (1969).  Generally, to obtain an injunction, a party must demonstrate irreparable harm, a likelihood of success on the merits, and an inadequate remedy at law.  Roach v. Combined Util. Commn, 290 S.C. 437, 442, 351 S.E.2d 168, 170 (Ct. App. 1986).

FOC Lawshe, 352 S.C. at 416, 574 S.E.2d at 232.
Subsequently, Mailsource, LLC v. M.A. Bailey & Associates, 356 S.C. 363, 588 S.E.2d 635 (Ct. App. 2003), provided a conscientious review of the law governing temporary injunctions:

 The granting of temporary injunctive relief is within the sound discretion of the trial court and will not be overturned absent an abuse of that discretion.  City of Columbia v. Pic-A-Flick Video, Inc., 340 S.C. 278, 282, 531 S.E.2d 518, 520-21 (2000).  An abuse of discretion occurs when a trial courts decision is unsupported by the evidence or controlled by an error of law.  County of Richland v. Simpkins, 348 S.C. 664, 668, 560 S.E.2d 902, 904 (Ct. App. 2002).
 To warrant a temporary injunction, the complaint must allege facts sufficient to constitute a cause of action for injunction and the information offered by both sides must demonstrate the injunction to be reasonably necessary to protect the legal rights of the plaintiff pending in the litigation.  Transcon. Gas Pipe Line Corp. v. Porter, 252 S.C. 478, 480-81, 167 S.E.2d 313, 315 (1969).  Generally, to obtain an injunction, a party must demonstrate irreparable harm, a likelihood of success on the merits, and an inadequate remedy at law.  Roach v. Combined Util. Commn, 290 S.C. 437, 442, 351 S.E.2d 168, 170 (Ct. App. 1986).
 
 It is well settled that, in determining whether a temporary injunction should issue, the merits of the case are not to be considered, except in so far as they may enable the court to determine whether a prima facie showing has been made.  When a prima facie showing has been made entitling plaintiff to injunctive relief, a temporary injunction will be granted without regard to the ultimate termination of the case on the merits. 
 
 Transcon., 252 S.C. at 481, 167 S.E.2d at 315.  [T]he sole purpose of a temporary injunction is to preserve the status quo . . . .  Powell v. Immanuel Baptist Church, 261 S.C. 219, 221, 199 S.E.2d 60, 61 (1973).  [A] temporary injunction is [used] to preserve the subject of controversy in the condition which it is at the time of the Order until opportunity is offered for full and deliberate investigation and to preserve the existing status during litigation . . . .  County Council of Charleston v. Felkel, 244 S.C. 480, 483-84, 137 S.E.2d 577, 578 (1964) (citation omitted).  A temporary injunction is made without prejudice to the rights of either party pending a hearing on the merits, and when other issues are brought to trial, they are determined without reference to the temporary injunction.  Helsel v. City of N. Myrtle Beach, 307 S.C. 29, 32, 413 S.E.2d 824, 826 (1992).  The court should be guided by general principles of equity:
 
 First, the equities of both sides are to be considered, and each case must be decided on its own particular facts.  Second, the court of equity must balance the equities between the parties in determining what if any relief to give.  The equities on both sides must be taken into account. 
 
 Foreman v. Foreman, 280 S.C. 461, 464-65, 313 S.E.2d 312, 314 (Ct. App. 1984) (citation omitted).  
 [A] court can, and should, grant a preliminary injunction in an arbitrable dispute whenever an injunction is necessary to preserve the status quo pending arbitration.  Teradyne, Inc. v. Mostek Corp., 797 F.2d 43, 47 (1st Cir. 1986).  The fact that a court orders arbitration of a dispute does not absolve [it] of its obligation to consider the merits of a requested preliminary injunction.  Roso-Lino Bev. Distribs., Inc. v. Coca-Cola Bottling Co. of New York, 749 F.2d 124, 125 (2d Cir. 1984).
 . . . . 
 An injunction is an equitable remedy; as such, it is available only where no remedy at law exists or where the legal remedy would fail to make the party whole.  
 
 The general rule is that an injunction should be granted only where some irreparable injury is threatened for which there is no adequate remedy at law.  Whether a wrong is irreparable in the sense that equity may intervene, and whether there is an adequate remedy at law for a wrong, are questions that are not decided by narrow and artificial rules.
 
 Cartee v. Lesley, 286 S.C. 249, 256, 333 S.E.2d 341, 345 (Ct. App. 1985) (citation omitted), cert. granted in part on other ground and decision affd, 290 S.C. 333, 350 S.E.2d 388 (1986); see also Knohl v. Duke Power Co., 260 S.C. 374, 376, 196 S.E.2d 115, 116 (1973) (holding that a complaint fails to state a cause of action for injunctive relief unless facts are alleged which show that the plaintiff has no adequate and complete remedy at law).

Mailsource, 356 S.C. at 367-70, 588 S.E.2d 637-39.
CONCLUSION
The factual and legal basis for the issuance of a temporary injunction did NOT exist in the case sub judice.  The evidentiary record demonstrates with clarity that the circuit judge improperly issued a temporary injunction.

[1] The lease between Springerland and the Hickmans included a provision for the event of default:
CANCELLATION OF LEASE BY LESSOR  If Lessee defaults under the payment terms of or for any other violation of this Lease, Lessor shall have the right to demand immediate possession of the premises.  If any such default shall occur, Lessor after proper notice of Ten (10) days to Lessee, shall have the right to change the locks to all entries and exits to the premises but shall allow Lessee to remove all personal belongings not under Lease from Lessor.
[2] Interestingly, in their financial declarations before the court, neither Marshall nor Mary Marshall listed Planet Follywood or Springerland as an asset or valuation for configuration of their net worth.            
[3] Respondents consist of Ken Marshall, Vol-World, and Springerland.  The Appellants are Pence, Massey, and Planets Edge.