588 S.E.2d 635

**MAILSOURCE, LLC f/k/a Wild Geese, LLC, Appellant,**

**v.**

**M.A. BAILEY & ASSOCIATES, Inc., Michael A. Bailey and Linda Bailey, Respondents.**

No. 3689.

Court of Appeals of South Carolina.

Heard Sept. 9, 2003.

Decided Nov. 3, 2003.

---

Stephen M. Cox, of Rock Hill, for Appellant.

Douglas F. Gay, of Rock Hill, for Respondents.

STILWELL, J.:

MailSource, LLC, purchased a direct mail processing business from M.A. Bailey & Associates, the shareholders of which are Michael and Linda Bailey (collectively, the Baileys). In addition to the asset purchase agreement, the parties entered into a consulting agreement that included a non-compete clause. MailSource appeals the denial of its motion for an injunction seeking to restrain the Baileys from violating the non-compete clause. We affirm.

## FACTS

The business bought by MailSource was called "Mail Right" by the Baileys. The Baileys retained an affiliated business called "List Right." In addition to the asset purchase agreement and the consulting agreement, the parties also entered into a supply agreement. The supply agreement defined "direct mail processing services as: all labeling, addressing, inserting, sealing, sorting, bundling and delivery and directly related services provided by Sellers and Mail Right Company prior to Closing Date."

The non-compete clause in the consulting agreement provides:

(a) *Noncompetition.* [The Baileys] shall not take any of the following actions during the applicable Noncompetition Period (as defined below):

(i) Become employed by ... involved or engaged in, or otherwise commercially interested in or affiliated with ... any person or entity that competes with [MailSource] or an affiliate thereof (each, a "Company Affiliate") in the business of direct mail processing services.

(ii) Solicit or attempt to solicit, for competitive purposes, the business of any of the clients or customers of a Company Affiliate, or otherwise induce such customers or clients or prospective customers or clients to reduce, terminate, restrict or alter their business relationship with a Company Affiliate in any fashion. . . .

MailSource alleges the activities the Baileys conducted through List Right violate the non-compete clause, pointing particularly to its activities on behalf of Church of the Rock. After MailSource purchased Mail Right, the Baileys, through List Right, provided a mailing list to the church sorted according to United States Postal Service requirements for receiving bulk mail discounted rates. They also provided the sorted list on mailing labels and the paperwork required by the post office. The only service not performed was applying the labels to the mailings. The Baileys through List Right provided similar services to other customers. Michael Bailey, President of List Right, stated in an affidavit:

The List Right business is not engaging in any activity at the current time that it did not engage in prior to the sale of

Mail Right to [MailSource]. It is selling lists to customers, and providing those lists to them in the format that the customer requests, which sometimes means providing the list to customers on pre-sorted labels. List Right is not doing any business now that was formerly done by Mail Right when your affiant was President of both.

MailSource filed an action against the Baileys seeking damages and injunctive relief for alleged violations of the agreement, fraudulent inducement, and unfair trade practices. MailSource asked for both preliminary and permanent injunctive relief. The trial court initially requested a proposed order granting a preliminary injunction but then issued an order denying a permanent injunction, finding that the pending appeal of the court's order denying arbitration divested it of jurisdiction. Pursuant to MailSource's second motion for preliminary injunction, the trial court issued an order denying it, stating: "The granting of said motion would alter the status quo during the pendency of the appeal."

## LAW/ANALYSIS

MailSource contends the trial court erred in refusing to grant its motion for an injunction. We find no abuse of discretion.

■ "The granting of temporary injunctive relief is within the sound discretion of the trial court and will not be overturned absent an abuse of that discretion." *City of Columbia v. Pic–A–Flick Video, Inc.*, 340 S.C. 278, 282, 531 S.E.2d 518, 520–21 (2000). "An abuse of discretion occurs when a trial court's decision is unsupported by the evidence or controlled by an error of law." *County of Richland v. Simpkins*, 348 S.C. 664, 668, 560 S.E.2d 902, 904 (Ct.App.2002).

■ To warrant a temporary injunction, the complaint must allege facts sufficient to constitute a cause of action for injunction and the information offered by both sides must demonstrate the injunction to be reasonably necessary to protect the legal rights of the plaintiff pending in the litigation. *Transcon. Gas Pipe Line Corp. v. Porter*, 252 S.C. 478, 480–81, 167 S.E.2d 313, 315 (1969). Generally, to obtain an injunction, a party must demonstrate irreparable harm, a

likelihood of success on the merits, and an inadequate remedy at law. *Roach v. Combined Util. Comm'n,* 290 S.C. 437, 442, 351 S.E.2d 168, 170 (Ct.App.1986).

> It is well settled that, in determining whether a temporary injunction should issue, the merits of the case are not to be considered, except in so far as they may enable the court to determine whether a prima facie showing has been made. When a prima facie showing has been made entitling plaintiff to injunctive relief, a temporary injunction will be granted without regard to the ultimate termination of the case on the merits.

*Transcon.,* 252 S.C. at 481, 167 S.E.2d at 315. "[T]he sole purpose of a temporary injunction is to preserve the status quo...." *Powell v. Immanuel Baptist Church,* 261 S.C. 219, 221, 199 S.E.2d 60, 61 (1973). "[A] temporary injunction is [used] to preserve the subject of controversy in the condition which it is at the time of the Order until opportunity is offered for full and deliberate investigation and to preserve the existing status during litigation...." *County Council of Charleston v. Felkel,* 244 S.C. 480, 483–84, 137 S.E.2d 577, 578 (1964) (citations omitted). "A temporary injunction is made without prejudice to the rights of either party pending a hearing on the merits, and when other issues are brought to trial, they are determined without reference to the temporary injunction." *Helsel v. City of N. Myrtle Beach,* 307 S.C. 29, 32, 413 S.E.2d 824, 826 (1992). The court should be guided by general principles of equity:

> First, the equities of both sides are to be considered, and each case must be decided on its own particular facts. Second, the court of equity must "balance the equities" between the parties in determining what if any relief to give. The equities on both sides must be taken into account.

*Foreman v. Foreman,* 280 S.C. 461, 464–65, 313 S.E.2d 312, 314 (Ct.App.1984) (citations omitted).

 "[A] court can, and should, grant a preliminary injunction in an arbitrable dispute whenever an injunction is necessary to preserve the status quo pending arbitration." *Teradyne, Inc. v. Mostek Corp.,* 797 F.2d 43, 47 (1st Cir.1986). The fact that a court orders arbitration of a dispute does not

"absolve [it] of its obligation to consider the merits of a requested preliminary injunction." *Roso–Lino Bev. Distribs., Inc. v. Coca–Cola Bottling Co. of New York,* 749 F.2d 124, 125 (2d Cir.1984).

While we are troubled by the Baileys' continued insistence they are able to conduct business which is strikingly similar to the business they sold and with which they agreed not to compete, we agree with the trial court that an injunction would alter the status quo. MailSource apparently knew that the retained List Right business was closely related, if not complementary, to the business it purchased, having sought and received a right of first refusal to purchase List Right if the Baileys decided to sell. Additionally, Michael Bailey states in his affidavit that List Right continues to conduct business as it did before the sale.

At least two other reasons buttress the trial court's denial of the injunction. First, some of the covenants in the non-compete agreement have already expired, and the remainder will soon expire. While that does not moot the issue, we must recognize the reality that any injunctive relief would be short-lived under the terms of the non-compete clause. MailSource invites our attention to the law of other jurisdictions where courts have extended the non-compete period following a breach to ensure the nonbreaching party receives the benefit of the bargain. We see no evidence this proposal was presented to the trial court for its consideration, nor do we find support for it in South Carolina law. We therefore decline to adopt this procedure as a matter of first impression, because to do so would essentially re-write the parties' contract, a service the courts of South Carolina do not perform. *See, e.g., Schulmeyer v. State Farm Fire & Cas. Co.,* 353 S.C. 491, 495, 579 S.E.2d 132, 134 (2003) (courts do not rewrite contracts); *Lewis v. Premium Inv. Corp.,* 351 S.C. 167, 171, 568 S.E.2d 361, 363 (2002) (same).

Second, MailSource, in addition to seeking an injunction, seeks and should be able to prove money damages from any breach by the Baileys. *Cf. Skinner v. Elrod,* 308 S.C. 239, 417 S.E.2d 599 (Ct.App.1992) (breach of noncompetition clause was compensable in liquidated damages). An injunction is an equitable remedy; as such, it is available only

where no remedy at law exists or where the legal remedy would fail to make the party whole.

> The general rule is that an injunction should be granted only where some irreparable injury is threatened for which there is no adequate remedy at law. Whether a wrong is irreparable in the sense that equity may intervene, and whether there is an adequate remedy at law for a wrong, are questions that are not decided by narrow and artificial rules.

*Cartee v. Lesley*, 286 S.C. 249, 256, 333 S.E.2d 341, 345 (Ct.App.1985) (citations omitted), *cert. granted in part on other ground and decision aff'd*, 290 S.C. 333, 350 S.E.2d 388 (1986); *see also Knohl v. Duke Power Co.*, 260 S.C. 374, 376, 196 S.E.2d 115, 116 (1973) (holding that a "complaint fails to state a cause of action for injunctive relief unless facts are alleged which show that the plaintiff has no adequate and complete remedy at law").

Based on the specific facts of this case, we find it is a close question whether a preliminary injunction should issue. However, we are unable to say the trial court abused its discretion in refusing to alter the status quo by restricting the Baileys' activities. *See Simpkins*, 348 S.C. at 668, 560 S.E.2d at 904.

**AFFIRMED.**

HOWARD and KITTREDGE, JJ., concur.