367 S.C. 458 (2005)
626 S.E.2d 38
Beth Ellen LEVINE, M.D., Respondent,
v.
SPARTANBURG REGIONAL SERVICES DISTRICT, INC. and Foothills Anesthesia Consultants, P.C., Appellants.
No. 4065.
Court of Appeals of South Carolina.
Heard November 10, 2005.
Decided December 19, 2005.
Rehearing Denied February 16, 2006.
*461 H. Spencer King, T. Alexander Evins and Perry Boulier, all of Spartanburg, for Appellants.
A. Camden Lewis, of Columbia and Michael Eugene Spears, of Spartanburg, for Respondent.
HEARN, C.J.:
This is an appeal from an order of the trial court enjoining Spartanburg Regional Services District, Inc. (the Hospital) and Foothills Anesthesia Consultants, P.C. (Foothills) from terminating the privileges of anesthesiologist Beth Ellen Levine until the merits of her case can be adjudicated. We affirm.

FACTS
Beth Ellen Levine is a licensed physician and board-certified anesthesiologist. Her competency as a physician is not, and has never been, an issue in this case.
On May 1, 2000, the Hospital and Foothills entered into a three-year "Anesthesiology Agreement" (2000 Agreement). Under the 2000 Agreement, Foothills agreed to provide the Hospital with anesthesia services performed by licensed and qualified anesthesiologists. Four months later, Foothills and *462 Levine entered into a "Medical Service Agreement" (Service Agreement). Under the Service Agreement, Levine agreed to perform anesthesia services for Foothills at the Hospital. The Service Agreement included a three-year term limit as well as an automatic renewal provision.
The renewal provision stated:
At the end of the initial term, this Agreement shall automatically renew for a period of three (3) years unless any party gives written notice to the other party at least ninety (90) days before the end of the renewal term of its intent not to renew the Agreement. [Foothills] agrees that it shall give [Levine] a notice of non-renewal only if the grounds for its decision not to renew this or subsequent Agreements would be grounds for terminating this or subsequent Agreements. If such notice of non-renewal is given and [Levine] elects to exercise the rights available under Section 7(h) of the Agreement prior to the expiration of this or subsequent agreements, the Agreement shall remain in full force and effect at least until the respective rights and obligations of the parties concerning the renewal of the Agreement are determined by final order of the arbitrator.
The 2000 Agreement, by its own terms, ended in May 2003, but the Hospital and Foothills extended it through June. On July 21, 2003, the President of Foothills told Levine the 2000 Agreement had expired. Despite the end of the arrangement between the Hospital and Foothills, Levine continued to perform anesthesia services at the Hospital.
On November 19, 2003, the Hospital Board of Directors (the Board) amended the bylaws to enable the Hospital to enter into an exclusive contract for core anesthesia services. The Board also amended a provision of the bylaws related to the termination of privileges at the Hospital. The amended provision of the bylaws stated:
Where a physician previously has been granted . . . privileges in a Restricted Member Service,[1] and was not, or is no longer, a Contract Physician,[2] the President shall so notify *463 the Board. The Board shall propose the termination of the affected physician's privileges. . . . The affected physician shall have the procedural rights set forth in the Medical Staff Bylaws related to revocation of privileges . . . but the only issues for determination in any such proceedings shall be:
(1) Whether the privileges in question are, in fact, privileges reserved for Restricted Member Services; and
(2) Whether the applicant presently is, in fact, a Contract Physician. . . .
(footnotes added). On January 30, 2004, the Hospital and Foothills entered into another three-year agreement (2004 Agreement).
A month later, on February 24, 2004, general counsel for the Hospital notified Levine that if Foothills did not employ her she would lose her privileges at the Hospital. On March 1, 2004, the President of the Hospital informed Levine of the Board's decision to terminate her privileges. He informed Levine that she was entitled to procedural rights under the bylaws, "but the only issues for determination in such proceedings" would be whether Levine was employed by Foothills.
On March 3, 2004, Levine filed the present action against the Hospital and Foothills for breach of contract, interference with a contractual relationship, violation of due process, and civil conspiracy. Levine also sought a temporary restraining order to prevent the Hospital from terminating her privileges. After a hearing, the trial court granted a temporary injunction against the Hospital and Foothills. Both entities appeal.

STANDARD OF REVIEW
The grant or denial of an injunction by the trial court will not be reversed absent an abuse of discretion. Gilley v. Gilley, 327 S.C. 8, 11-12, 488 S.E.2d 310, 312 (1997); MailSource, L.L.C. v. M.A. Bailey & Assocs., 356 S.C. 363, 367, 588 S.E.2d 635, 637-38 (Ct.App.2003). An abuse of discretion occurs when the decision of the trial court is unsupported by the evidence or controlled by an error of law. Ledford v. Pa. Life Ins. Co., 267 S.C. 671, 675, 230 S.E.2d 900, 902 (1976); County of Richland v. Simpkins, 348 S.C. 664, 668, 560 S.E.2d 902, 904 (Ct.App.2002).

*464 LAW/ANALYSIS
The Hospital and Foothills argue the trial court erred when it enjoined the Hospital from revoking Levine's privileges. We disagree.
"An injunction is a drastic remedy issued by the court in its discretion to prevent irreparable harm suffered by the plaintiff." Scratch Golf Co. v. Dunes W. Residential Golf Props., Inc., 361 S.C. 117, 121, 603 S.E.2d 905, 907 (2004). To obtain an injunction, the plaintiff must allege facts sufficient to constitute a cause of action for injunction and demonstrate the injunction is reasonably necessary to protect the legal rights pending in the litigation. County of Richland v. Simpkins, 348 S.C. 664, 669, 560 S.E.2d 902, 904 (Ct.App.2002). To establish a cause of action for injunction, the plaintiff must show "(1) it would suffer irreparable harm if the injunction is not granted; (2) it will likely succeed on the merits of the litigation; and (3) there is an inadequate remedy at law." Scratch Golf, 361 S.C. at 121, 603 S.E.2d at 908.

A. Irreparable Harm
The Hospital and Foothills argue Levine has not suffered irreparable harm entitling her to injunctive relief because the harm she alleges can be remedied by monetary damages alone. We disagree.
The sole purpose of an injunction is to preserve the status quo to avoid potential irreparable injury to the aggrieved party pending litigation. Zabinski v. Bright Acres Assocs., 346 S.C. 580, 601, 553 S.E.2d 110, 121 (2001); MailSource, L.L.C. v. M.A. Bailey & Assocs., 356 S.C. 363, 368, 588 S.E.2d 635, 638 (Ct.App.2003). Before granting an injunction, the trial court should balance the equities: the court should look at the particular facts of each case and the equities of each party and determine which side, if any, is more entitled to equitable relief. MailSource, 356 S.C. at 368, 588 S.E.2d at 638. Whether "a wrong is irreparable, in the sense that equity may intervene, and whether there is an adequate remedy at law, are questions that are not decided by narrow and artificial rules." Kirk v. Clark, 191 S.C. 205, 211, 4 S.E.2d 13, 16 (1939).
*465 The trial court found that Levine, as a physician with a private practice, would suffer irreparable harm if an injunction was not granted. The record supports this conclusion. Levine has built a patient referral base through her work at the Hospital. This referral base would erode and potentially disappear if Levine lost her privileges at the Hospital while the merits of her underlying action against the Hospital and Foothills are adjudicated. Levine would also lose competency in anesthesiology if she were unable to ply her trade as the lawsuit progressed. Such inactivity could lead to the loss of her professional practice and career, which can be an irreparable harm.[3] Therefore, we find the trial court did not abuse its discretion in deciding Levine would suffer irreparable harm without injunctive relief.

B. Success on the Merits
The Hospital and Foothills next argue Levine cannot succeed on the merits because the 2004 Agreement is an enforceable exclusive contract and the Service Agreement ended, without renewal, when the 2000 Agreement expired. We disagree.

1. Validity of the 2004 Agreement
When seeking a preliminary injunction, the plaintiff need not prove an absolute legal right; the plaintiff need only present "a fair question to raise as to the existence of such a right." Williams v. Jones, 92 S.C. 342, 347, 75 S.E. 705, 710 (1912). The determination of whether an injunction is granted should not be based on the merits of the underlying case except insofar as the merits may assist the trial court in *466 determining whether a prima facie showing has been made. MailSource, 356 S.C. at 368, 588 S.E.2d at 638 (citing Transcon. Gas Pipe Line Corp. v. Porter, 252 S.C. 478, 481, 167 S.E.2d 313, 315 (1969)). "Once a prima facie showing has been made entitling the plaintiff to injunctive relief, a temporary injunction will be granted without regard to the ultimate termination of the case on the merits." Helsel v. City of North Myrtle Beach, 307 S.C. 29, 32, 413 S.E.2d 824, 826 (1992).
The trial court concluded Levine made a prima facie showing she was entitled to protection under the Hospital bylaws. Once this conclusion was made, the court was not required to determine whether the 2004 Agreement was valid. Accordingly, the trial court did not abuse its discretion in deciding Levine would likely succeed on the merits of the underlying action.

2. Automatic Renewal Provision of the Service Agreement
The trial court also concluded Levine made a prima facie showing she was entitled to protection under the Service Agreement. The record supports this conclusion as well. Under the Service Agreement, Foothills was required to give Levine notice of its intent not to renew the Service Agreement ninety days before the termination of the Service Agreement. The July 21, 2003 letter from the President of Foothills to Levine does not appear to satisfy this requirement because it was sent within ninety days of the termination of the Service Agreement. Thus, the Service Agreement may have automatically renewed until September 1, 2006. Thus, we find the trial court did not abuse its discretion in determining Levine made a prima facie showing of success on the merits under the Service Agreement.

C. Inadequate Remedy at Law
Finally, the Hospital and Foothills argue Levine has an adequate remedy at law because she can recover money damages for her injuries. We disagree.
The purpose of an injunction is the preservation of the status quo. MailSource, 356 S.C. at 368, 588 S.E.2d at 638. "A temporary injunction is used to preserve the subject *467 of controversy in the condition which it is at the time of the [o]rder until opportunity is offered for full and deliberate investigation and to preserve the existing status during litigation." Id. As explained above, the trial court decided monetary damages alone would not remedy the harm Levine would sustain if her privileges at the Hospital were terminated. If Levine lost her privileges, her professional practice and, by extension, her career may very well be lost long before her claims against the Hospital and Foothills were finally adjudicated. This point is perhaps best buttressed by a provision of the 2004 Agreement between the Hospital and Foothills that states when privileges are terminated damages will "be difficult, if not impossible, to ascertain, and it is therefore agreed that [the Hospital] and Foothills shall have the right to an injunction or other equitable relief. . . ." Thus, we find the trial court did not abuse its discretion when it concluded the loss of a professional practice and a career could not be adequately remedied through money damages alone.

CONCLUSION
For the forgoing reasons, the order of the trial court is AFFIRMED.
HUFF and WILLIAMS, JJ., concur.
NOTES
[1] "Restricted Member Service" includes anesthesiology.
[2] A "Contract Physician" is a "physician who is employed by a physician group who is party to an exclusive contract."
[3] Other appellate courts have upheld injunctive relief to prevent the loss of a business or business goodwill. District of Columbia v. E. Trans-Waste of Md., Inc., 758 A.2d 1, 15 (D.C.2000) ("While economic loss does not, in and of itself, constitute irreparable harm, such harm will be found if economic loss threatens the very existence of [plaintiff's] business."); Campbell Inns, Inc. v. Banholzer, Turnure & Co., 148 Vt. 1, 527 A.2d 1142, 1146 (1987) ("The potential loss of a business satisfies the irreparable harm requirement for the issuance of an injunction."); IAC, Ltd. v. Bell Helicopter Textron, Inc., 160 S.W.3d 191, 200 (Tex.App. 2005) ("Loss of business goodwill or loss that is not easily calculated in pecuniary terms is sufficient to show irreparable injury for purposes of obtaining a temporary injunction.").